UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

MICHAEL MCLENNON AND RICHARD CAMPBELL

               PLAINTIFFS

     -AGAINST-

NEW YORK CITY, POLICE OFFICER VORRARO,
DETECTIVE GALASSO, DETECTIVE RUSSO,
DETECTIVE STEVEN DELUCA,
DETECTIVE PHILIP MATHEW,
DETECTIVE DANIEL HERNANDEZ,
SERGEANT BEATTY,
LIEUTENANT KAISER,
DETECTIVE ALAMONTE, OFFICERS JOHN DOE 1-5,
AND NEW YORK CITY POLICE DEPARTMENT

             DEFENDANTS
_____

MEMORANDUM OF LAW IN
OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS

13 CV 128 (KAM)(SMG)

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Tamara Harris
The Law Office of Tamara M. Harris
111 Broadway, Suite 706
New York, New York 10006
(212) 334-1050

Attorney for Michael McLennon and Richard Campbell

<u>DEFENDANT'S MOTION TO DISMISS MUST BE DENIED BECAUSE IT IS REALLY A
SUMMARY JUDGMENT MOTION DISGUISED AS A MOTON TO DISMISS</u>

Defendants submit a purported motion to dismiss, which has extraneous

exhibits not attached, incorporated, referenced or relied in plaintiff's complaint. *See*

*Defense Motion to Dismiss, Exhibits A –N*.  As discussed below, defendant's motion to

dismiss is really a summary judgment motion in disguise and should be treated as

such.

<u>STANDARD FOR ATTACHING DOCUMENTS TO A MOTION TO DISMISS AND WHEN
EXTRANEOUS DOCUMENTS SHOULD BE EXCLUDED FROM THE COURT'S
CONSIDERATION</u>

When material outside the complaint is presented to and not excluded by the

Court, a motion to dismiss shall be treated as one for summary judgment and

disposed of as provided in Federal Rule of Civil Procedure 56, and all parties must

be given reasonable opportunity to present all material made pertinent to such a

motion. *Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2002), citing Fed. R. Civ. P.

12(b).  For the purposes of this rule, "the complaint is deemed to include any

written instrument attached to it as an exhibit or any statements or documents

incorporated in it by reference". *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62

F.3d 69, 72 (2d Cir. 1995) (per curiam)(*quoting Cortec Indus., Inc. v. Sum Holding

L.P.,* 949 F.2d 42,47 (2d Cir. 1991).

Even when a document is not incorporated by reference, the court may

nevertheless consider it on a motion to dismiss where the complaint relies heavily

upon its terms and effect, which would render the document integral to the

complaint. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.

1995).  It is a general rule that a court may consider, on a motion to dismiss:

1.documents attached to a complaint or incorporated in it by reference, 2. matters of which judicial notice may be taken or, 3. documents in plaintiffs possession, which plaintiff had knowledge of and relied on in bringing suit. *Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2002).

However, the Second Circuit has also held that many courts have misapplied this general rule and that it was imperative to correct a misunderstanding that had become prevalent. *Id*.  In discussing the general rule in *Chambers,* the Court stated as follows: "We considered this standard again in *Brass v. American Film Technologies, Inc.* 987 F.2d 142, 150 (2d Cir. 1993), where we stated in dicta that, on a motion to dismiss, a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference…maters of which judicial notice may be taken, or…documents either in plaintiffs' possession or which plaintiffs had knowledge and relied on in bringing suit.' **Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite the Court's consideration of the document on a dismissal motion. Mere notice or possession is not enough**." *Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2002), citing Cotec, 949 F.2d at 47-49.

Counsel for defendants gives a recitation of facts that contradicts the facts as stated in the plaintiffs Amended Complaint, i.e., asserting plaintiff McLennon was the initial aggressor. *Cf. Amended Complaint 7*.  He asks the Court to adopt his set of facts and take judicial notice of them because his version of the facts are contained in police reports- inclusive of Complaint Follow Up reports, arrest report, and

3

unusual occurrence reports; and because these facts are contained in the felony complaints sworn to by Detective Deluca, and ultimately filed with the Court at arraignment. See Defense Motion to Dismiss Exhibits C-J).  Mr. Weingarten contends that he is entitled to submit an abundance of extraneous materials (Defense Exhibit C-J), outside of the four corners of Plaintiff's Amended Complaint, in support of his motion to dismiss. Defense counsel supports this contention by claiming these documents "are implicitly incorporated into the complaint, public records (as plaintiffs were convicted of crimes of which they were arrested and thus, their records are not sealed), and/or plaintiffs were in possession of such documents when bringing this lawsuit, as plaintiffs' counsel was also plaintiffs' criminal defense attorney." *Ftnt 4 of Defendants' Memorandum of Law in Support of Motion to Dismiss (page 7)*.

All of these contentions are meritless and evidence the misunderstanding that the *Chambers* Court sought to correct. *Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2002), *citing Cotec*, 949 F.2d at 47-49.  The fact that a document may be available to the public upon request, or may be in the possession of the plaintiff, does not mean a Court can consider it as part of a motion to dismiss. Rather, if plaintiffs did not rely on the terms and effect of that document in drafting their complaint then a court cannot consider it on a motion to dismiss. *Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2002).

The terms and effect of defendants Exhibits C-J, annexed to their Motion to Dismiss (police arrest reports, detective Complaint Follow up reports, Detective

Unusual Occurrence Report, and Felony Complaints filed at arraignment) have never been relied on by plaintiffs McLennon or Campbell in drafting their complaint.

Moreover, plaintiffs dispute the content in these reports (Defense Exhibits C-J), and urge the court to deny defense counsel's request to take judicial notice of the content of these extraneous exhibits. Plaintiff's complaint alleges that police falsified police reports to hide exculpatory evidence and make their case against plaintiff's appear stronger than it was.

Defendant's falsification of police reports is one of the basis for plaintiff's claims of malicious prosecution and false arrest under 42 USCS Section 1983. *Amended Complaint 18,23,24, 35-38,42,43,48,49,61-66,68,76-79,81-84,86,90,94,97,98,99*. As such, it would be highly inappropriate for the Court, under Federal Rule of Evidence 201(b), to take judicial notice of reports whose accuracy is contested in this litigation. See Fed. R. Evid. 201(b)(judicial notice pertains to cases where facts are not in dispute. "The Courts may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined by resort to sources whose accuracy whose accuracy cannot reasonably be questioned").

The McLennon/Campbell case is unique and distinguishable from the cases cited in defendant's motion to dismiss, where arrest reports, certificates of disposition, arraignment records, criminal court complaints, and indictments were deemed permissible extraneous material on a defense motion to dismiss. None of the cases cited by plaintiff involved allegations that the police fabricated evidence,

documented false eyewitness testimony in police reports, and misrepresented

material facts in Felony Complaints. *Amended Complaint 18,23,24, 35-*

*38,42,43,48,49,61-66,68,76-79,81-84,86,90,94,97,98,99.* As such, where the accuracy

of Defense Exhibits C-J are in dispute, judicial notice should not be given to these

exhibits.

Even assuming, arguendo, that the Court found that these extraneous

documents (Defense Exhibit C-J) were proper on a motion to dismiss, the Court is

forbidden from accepting the content of these documents for the truth of the matter

asserted in them. *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.* 146

F.3d 66,70 (2d Cir. 1998). When a court elects to take judicial notice of documents

filed in another court, it  may only take judicial notice that the document was filed in

another court, and that another litigation existed- not for the truth of the matter

asserted in the document. *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A.,*

*Inc.* 146 F.3d 66,70 (2d Cir. 1998).

The following are the exhibits defendant erroneously claims are

incorporated by reference in plaintiff's complaint, and impermissibly requests the

Court take judicial notice of:

<u>DEFENSE EXHIBITS C AND D (FELONY COMPLAINTS SIGNED BY DEFEDANT DELUCA) AND E (UNUSUAL OCCURRENCE REPORT) AND H (ARREST REPORT FOR CAMPBELL) AND I(ARREST REPORT FOR MCLENNON) AND G (COMPLAINT FOLLOW UP OF DET. LASPINA 9/25/07) AND J (COMPLAINT FOLLOW-UP OF DET. LASPINA 10/7/07) ARE NOT INCORPORATED BY REFERENCE IN THE COMPLAINT OR APPROPRIATE FOR JUDICIAL NOTICE</u>

Defense Exhibit C is the felony complaint against Michael McLennon, and was

signed by Detective Deluca on September 27, 2007.  It charged McLennon with

Attempted Murder in the Second Degree, Assault in the First Degree, Criminal

Possession of a Weapon in the Second Degree, Criminal Possession of a Weapon in the Third Degree, and Criminal Possession of a Weapon in the Fourth Degree. Exhibit D is the felony complaint against Richard Campbell, signed by Detective Deluca on September 26, 2007, and contains the same charges. Each of these respective felony complaints allege as follows: that Detective Deluca was informed by Rasheel Dixon that Michael McLennon and Richard Campbell both possessed firearms on September 25, 2007 in front of their residence at 191-20 110 Road, Queens, New York; that Richard Campbell fired a pistol at Rasheel Dixon and his father, Winston; that Michael McLennon fired a separate firearm- a revolver- at Rasheel Dixon and Rasheel's father, Winston Dixon; that both Campbell and McLennon shot Winston in the torso and caused a laceration to Rasheel's hand through the discharge of their weapons; that Dr. Platz of North Shore confirmed Winston had been shot in the torso; that Dr. Elkowitz of North Shore University Hospital confirmed the deep laceration to Rasheel Dixon's hand, caused by McLennon and Campbell; and that Deluca was informed by Detective Galasso that guns were recovered from plaintiffs' home pursuant to a search warrant, signed by Judge Melendez at 10pm on September 25, 2007.

Counsel for defendants asks the Court to take judicial notice of this document on the ground it is public record, implicitly incorporated in the Complaint, and already in plaintiff's possession. *See Defense Memorandum of Law in Support of Dismissal, p. 7, ftnt 4*.

This argument is without merit because the facts contained in this document have no indicia of accuracy, *see Fed. R. Evid 201(b),* and contain factual assertions

that were belied by the physical, forensic and eyewitness evidence police uncovered during their initial investigation on September 25, 2007.  Contrary to the factual assertions in Deluca's felony complaints, ballistics evidence confirmed one shooter and not two shooters- and that the shots were fired from within the home, as opposed to outside (*Amended Complaint 22,28*). Furthermore, Deluca's claims in Defense Exhibit C and D, that Rasheel was injured as a result of plaintiffs firing guns at him and his father, was refuted by Dr. Elkowitz (contrary to Deluca's claims that Rasheel's gunshot wound was confirmed by Dr. Elkowitz). *See Plaintiff's Exhibit A (Elkowitz medical record).* DNA evidence ultimately confirmed Elkowitz's diagnosis, when it was proven Winston Dixon accidentally stabbed his son in the hand after bein shot and all assault in the second degree charges related to Rasheel Dixon were dismissed at trial, before the case was sent out to the jury for deliberations*. See Defense Exhibit K.* Notably, defense Exhibit K is an incomplete indictment and does not contain the elements of the charges for which plaintiffs were indicted. The complete indictment is attached as *Plaintiff's Exhibit B (Indictment).*

Clearly, the facts contained in this Felony Complaint, sworn to by Detective Deluca, are not undisputable facts whose accuracy is beyond question, such that judicial notice should be taken. *See Fed. R. Evid. 201(b)*.  Moreover, plaintiffs certainly did not rely on the terms, effect, or  accuracy of this document when drafting their complaint. *Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2002). Defendant's contention that the felony complaint is incorporated in the Amended Complaint, because the undersigned possessed these documents in her capacity as McLennon's criminal defense attorney, is misplaced. Mere notice or possession is

not enough to allow the Court to consider the document on a dismissal motion. *Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2002), *citing Cortec*, 949 F.2d at 47-49.

Defense Exhibit E, the Unusual occurrence report of Steven Deluca dated September 24, 2007, has the same flaws as Defense Exhibits C and D, rendering judicial notice inappropriate. The unusual occurrence report indicates that Rasheel told Detective Deluca that he and his father were shot outside when both McLennon and Campbell came out with guns (black and silver) and began to fire,causing injury to both Winson and Rasheel. Deluca notes on the form that Rasheel's wound may have been caused by a knife and describes it as a slash. Notably, this report diverges from the felony complaint Deluca subsequently submitted to the Court on September 26 and 27, 2007, whereby he indicates both Rasheel and Dixon's wounds are caused by McLennon and Campbell shooting guns.   Defense Exhibit E is not mentioned anywhere in plaintiff's amended complaint and, accordingly, should be excluded by the Court from its consideration of defendant's motion to dismiss. Moreover, the factual content therein is in dispute and is therefore to judicial notice being taken. *See Fed. R. Evid. 201(b).*

Defense Exhibits H and I (arrest reports) indicate McLennon and Campbell shot weapons and that McLennon shot Rasheel as well. Plaintiffs have vigorously denied Campbell ever fired a weapon and no physical evidence was recovered to ever support that baseless notion. *Amended Complaint 22*. The arrest report for McLennon, drafted by Detective Deluca,  further indicates that his stab wounds are a mere "scar," which was a distortion of the truth aimed at covering up the evidence of

self-defense. *Amended Complaint 61-67*. The facts contained in these reports are not accurate or reliable and do not satisfy the evidentiary requirements of Federal Rule of Evidence 201(b).Moreover, the arrest reports are never referenced in the Amended Complaint and plaintiff did not rely on the terms and effect of that document in drafting the Amended Complaint. *See Cortec Indus., Inc. V. Sum Holding, L.P.*, 949 F.2d 42 at 47-48 (2d Cir. 1991). Accordingly, the arrest reports should be excluded from the Courts consideration or the motion should be converted to one for summary judgment.

Defense Exhibit G (Complaint Follow-up) is Detective Laspina's September 25, 2007 report on interviews conducted with people in the neighborhood, some of whom heard shots. However, no one saw the shooting according to the report. This report is referenced nowhere in plaintiff's complaint, and is was not relied on by plaintiff in drafting the complaint. Moreover, a detective's summary of what he claims witnesses told him, unsigned by those witnesses, has no indicia of reliability of accuracy to warrant judicial notice being taken.

Similarly, Exhibit J (Complaint follow-up of Detective Joseph Laspina from 10/7/2007) is the detective's version of what the coroner explained to him about the entrance and exit wounds of the bullets that penetrated Dixon, the organs that were hit by the trajectory, the number of bullets that penetrated Dixon, and the vouchering process of the three bullets recovered from Dixon's body. This report is not written by Dr. Cantonese (the actual coroner) or reviewed by him, and it contains several inaccuracies that don't comport with the real autopsy report in the case, including the number of bullets that Laspina claims penetrated Dixon.

Detective Laspina's account of an autopsy is hardly a reliable medical source whose accuracy cannot be questioned. See Fed. R. Evid. 201(b).  Accordingly, the Court should deny defendant's request to take judicial notice of this report. Moreover, plaintiff's do not rely on or reference Laspina's report anywhere in their complaint, such that it would be a proper exhibit in a motion to dismiss. As such, the record should be excluded from the motion to dismiss

JUDICIAL NOTICE OF DEFENSE EXHIBIT F SHOULD NOT BE TAKEN AND ITS IS IMPROPERLY ATTACHED TO DEFENDANT'S MOTION TO DISMISS

Defendant's Exhibit F is a complaint follow-up Informational Report dated 9/25/2007, signed by Det. Faranda and Lt. Kaiser, indicating an interview of John Cook (whose name is redacted on Defendant's Exhibit F, even though the unredacted form was disclosed at trial and John Cook testified). According to the Complaint Follow Up John Cook gave the following statement: while he was at home he observed, from his window, the two brothers next door (McLennon and Campbell) with black guns during an altercation with two other men and heard gun shots after he moved away from the window.

Defense counsel seeks for this Court to take judicial notice of this purported statement of John Cook, which would mean that the Court finds the factual accuracy of the police account of what John Cook said is unquestionably accurate and beyond dispute. *Fed. R. Evid. 201(b)*.  However, this is utterly impossible since the content of this complaint follow up report, approved by Lt. Kaiser, was completely contradicted by Mr. Cook himself when he testified in front of the trial jury, and exposed to be a lie.  *Plaintiff's Exhibit C (Excerpts of John Cook Trial Testimony).* Mr. Cook testified at trial that he believed he saw an unknown person, who he did not

11

recognize, with an object that could have been a gun, subsequent to hearing gun shots.

Accordingly, Defense Exhibit F did not accurately and truthfully depict Cook's observations and cannot be accorded judicial notice under Federal Rule of Evidence 201(b); nor is it incorporated in plaintiff's Amended Complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 at 47-48( 2d Cir. 1991). As such, it is not entitled to judicial notice.

In this case, defendants have used extraneous material, never mentioned in the plaintiff's Amended Complaint, to state their case for dismissal. The law is very clear that such an impermissible motion for summary judgment, disguised as a motion to dismiss, should be converted to a motion for summary judgment. "When material outside the complaint is presented to and not excluded by the court, 'the motion shall be treated as one for summary judgment and disposed of as provided in Federal Rule of Civil Procedure 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion...' Fed. R. Civ. P. 12(b)."*Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2001). The requirement that a Court convert a motion to dismiss for failure to state a claim into a motion for summary judgment whenever a district court considers extra-pleading material in ruling on the motion shall be strictly enforced. *Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2001), *citing Fed. Rules of Civ. Proc. Rule 12(b)* (holding that district court improperly considered codes of fair practice on motion to dismiss, where complaint did not rely on codes in drafting the complaint, did not reference them, and none of the codes submitted to the court were signed by the record companies,

and thus, when the court considered them, it was obligated to convert the motion to one for summary judgment). *See also, Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000), *quoting Amaker v. Weiner*, 179 F.3d 48,50 (2d Cir. 1999). Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of the Federal Rule of Civil Procedure 8(a)(2), which requires that the Complaint contain only a short and plain statement of the claim showing that the pleader is entitled to relief. *Fed. R. Civ. Proc. 8(a)(2).*

The law is clear that when a district court is presented with matters outside the pleadings on a motion to dismiss it has two options: 1. The Court can exclude the extrinsic documents or 2. If it choses not to exclude the extrinsic documents, the Court must convert the motion into one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56. *See Carter v. Stanton*, 405 U.S. 669, 671 (1972); *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000); *Morelli v. Cedell*, 141 F.3d 39, 45-46 (2d Cir. 1998). The rationale for this rule is that "when a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claims by examining and incomplete record. In contrast, on summary judgment the court is required to consider all relevant, admissible evidence submitted by the parties and contained in the 'pleadings, depositions, answers to interrogatories, and admissions on file together with... affidavits...'" *Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2001), *citing Fed. Rules of Civ. Proc. 56(c).*

In the instant case defendants twist, distort and refute the claims plaintiff's make in the amended complaint by attaching extrinsic evidence to their motion to dismiss (i.e  police reports falsely claiming an eyewitness/neighbor saw the brothers with guns; felony complaints of Detective Deluca falsely claiming that both plaintiffs shot two separate guns, and that Dr. Elkowitz informed him that guns caused injury to Rasheel Dixon; police reports erroneously describing the autopsy findings of the Medical Examiner's office, among other things.) The problem of allowing extraneous material on a motion to dismiss is that it gives the movant an unfair advantage without the benefit of any depositions or other discovery.

To illustrate, defense counsel cites the above Defense Exhibits in his factual portion of the Motion to Dismiss to argue that McLennon is not entitled to a justification defense with respect to Winston Dixon because he was the initial aggressor, and that McLennon's neighbor, John Cook, witnessed the brothers with guns outside before they shot at the Dixons-which was confirmed by Rasheel.  See Defense Exhibits C,D,E,F.  Defense counsel, however, does not attach any discoverable information that would contradict his version of the facts, or disprove them. For example, an eyewitness/confidential informant gave an account which clearly evidenced Winston Dixon, not McLennon, was the initial aggressor on September 25, 2007. *See Plaintiff's Exhibit D, Excerpt of Trial Testimony of Andrew Khadaroo* (indicating McLennon never had a gun outside and never laid a hand on Winston Dixon before Winston drew a butcher knife and chased McLennon into his own home at knifepoint (with his son), before shots rang out from within the house.). *Am. Compl. 7.*  Campbell's written statement corroborates that McLennon

never laid a hand on Winston Dixon before Winston chased him at knifepoint into the house, prior to McLennon shooting in self defense. *See Defense Motion to Dismiss, Exhibit B (Campbell Statement).*

Similarly, defense counsel fails to attach the trial testimony of John Cook-presumably because it would disprove defense counsel's version of the facts, and establish that Cook never identified McLennon and Campbell (brothers) as having a gun outside. As a matter of fact, he was not even sure it was a gun he saw and seems to have assumed that fact by virtue of the fact he previously heard gunshots. *See Plaintiff's Exhibit C, Excerpt of John Cook's trial testimony).*

Similarly, defendants try to twist Richard Campbell's written statement, Defense Exhibit B, to claim that McLennon was an initial aggressor for punching Rasheel after Rasheel got in McLennon's face during an angry verbal exchange. *Cf. Am. Compl. 7.* Yet, defendants omit McLennon and Campbell's grand jury testimony about Rasheel threatening McLennon and waving a bottle in McLennon's face before McLennon pushed, or punched him away; and Winston immediately pulling a knife out to stab McLennon before the chase ensued into the house). Defendants also chose to ignore the rest of Campbell's written statement regarding Dixon pulling the knife, trying to stab McLennon, and chasing McLennon into his home before shots rang out. Notably, the only issue that faced the jury at deliberations was the behavior between Winston Dixon and Michael McLennon (all counts related to Rasheel were dismissed during trial). As a result, the issue the jury faced in this trial was never who the initial aggressor was as between Rasheel Dixon and Michael McLennon. The issue the jury was called upon to determine was who the initial

15

aggressor was as between Michael McLennon and Winston Dixon. As to this issue the evidence was overwhelmingly clear that Winston was the initial aggressor and attacked McLennon with the knife without McLennon ever laying a hand on him. *See Exhibit D, Excerpt of Khadaroo testimony; Defense Exhibit B, Campbell written statement.*

These examples illustrate the unfairness to plaintiffs by allowing defendants to pick and choose what exhibits they will attach to a motion to dismiss when plaintiffs have not yet had the benefit of any depositions or other discovery in this case. Because of the situation defendants have created, in attaching extraneous exhibits to their motion to dismiss, the Court should either consider the defendant's motion to dismiss to the exclusion of the aforementioned defense exhibits and exclude any reference made to them in the defense's memorandum of law in support of dismissal; or, in the alternative, the court should convert the purported motion to dismiss to one for summary judgment, and the parties should be given an opportunity to complete discovery and submit additional material contemplated by Rule 56. *See Carter v. Stanton*, 405 US 669,671 (1972). Moreover, defendants' request that the Court take judicial notice of these exhibits should be summarily denied given the multiple inaccuracies and falsehoods contained in the Defense Exhibits- fabrications which are also the subject of this litigation. *See Carter v. Stanton*, 405 US 669, 671 (1972); *Amended Complaint 18-22*.

<u>PLAINTIFF'S FILED A TIMELY NOTICE OF CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

Plaintiffs endured a continuing tort, premised on a continuous stream of misconduct by law enforcement officials aimed at causing them severe emotional

distress, from the inception of their incarceration until the date they were acquitted

of murder and convicted of a series of weapons related offenses on December 14,

2011. Notice of claim was filed within two months of the verdict, in February of

2012. "Generally under New York law, despite the general principal that a cause of

action accrues when the wrong is done, regardless of when it is discovered, certain

wrongs are considered to be continuous wrongs, and the stature of limitations

therefor runs from the commission of the last wrongful act. *Neufeld v. Neufeld*, 910 F.

Supp. 977, 982 (SDNY 1996). *See also Shannon v. MTA Metro-North R.R.*, 209 A.D.2d

218 (1st Dept. 2000) (holding railroad employee stated a claim for intentional

infliction of emotional distress against employer and other defendants by alleging

that employer and other defendants intentionally and maliciously engaged in a

pattern of harassment, intimidation, humiliation and abuse, causing him unjustified

demotions, suspensions, lost pay and psychological and, emotional harm over a

period of years. Continuing tort doctrine permitted employee to rely on wrongful

conduct occurring more than one year prior to commencement of action, where

plaintiff showed this pattern of misconduct causing emotional distress). In the

instant case notice the Amended complaint sets forth a long stream of continuous

misconduct, fraud, and perjury committed by the police in order to cause plaintiff's

severe emotional distress. *Amended Complaint 18-31,33,35,36,42-46,52-*

*59,65,68,71,73-79,82,88,97-99, 115-118*.

Defendants claims that no Intentional Infliction of Emotional Distress claim

can lie in federal court where the conduct underlying the claim falls within

traditional tort liability is incorrect. *See Shannon v. MTA-Metro North RR*. (209

A.D.2d 218 (holding that intentional infliction of emotional distress claim not

preempted by federal statute). Moreover, contrary to defense counsel's claims, the

Second Circuit has not resolved whether a claim for intentional infliction of

emotional distress is truly barred as a matter of law when the underlying conduct is

actionable under another theory of tort liability. *See Bender v. City of New York*, 78

F.3d 787 at 791-92 (2d Cir. 1996)(finding it unnecessary to resolve this state law

issue). Accordingly, the Second Circuit has not issued a bar to plaintiffs pursuing

both a section 1983 and intentional infliction of emotional distress claim, and

plaintiffs should be allowed to proceed to trial on both claims.

PLAINTIFF'S FALSE ARREST CLAIMS UNDER 42 USCS SECTION 1983 ARE NOT

TIME BARRED

A civil rights claim under 42 USCS Section 1983 accrues on the date when the

alleged conduct has caused the claimant harm *and* the claimant knows or has reason

to know of the allegedly impermissible conduct and the resulting harm. *Veal v.*

*Geraci*, 23 F.3d 722 (2d Cir. 1994) (holding that plaintiff's 42 USCS Section 1983

cause of action for an unlawful arrest, based on a tainted lineup, began to accrue on

the date the criminal judge conducted a Wade hearing, at which time evidence was

adduced of an unduly suggestive lineup. The date of the Wade hearing is the date

plaintiff discovered that the cause of his injury, to wit, his arrest and imprisonment,

was caused by an unduly suggestive lineup.)

Despite defense counsel's claims that a false arrest claim always accrues at

the date of arraignment, the Second Circuit has carved out explicit exceptions to this

rule and held that a plaintiff must know of *both* the injury (imprisonment) and the

cause of the injury (unlawful conduct of the police giving rise to the imprisonment), before the statute of limitations on the Section 1983 claim begins to accrue.   *Veal v. Geraci*, 23 F.3d 722 (2d Cir. 1994); *Barrett v. United States*, 689 F.2d 324, 333 (2d. Cir. 1982) (Section 1983 claim accrues only after claimant knows or has reason to know of both the harm and the cause of the harm), *cert. denied* 462 US 1131 (1983); *Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir. 1988) (claim alleging sheriff conspired to deny claimant a fair trial accrued upon later discovery of sheriff's improper conduct).

In the instant case the complaint articulates sufficient facts to show that, although plaintiffs were aware of the harm they suffered (arrest and incarceration) on or about September 26, 2007 and September 28, 2007, they were not aware of the impermissible conduct by police that caused the harm.

Plaintiff's became aware of the impermissible search of their home without a warrant during a suppression on November 3, 2010. *See Amended Complaint 41,42,43,44,45*. On November 3, 2010 Detective Mathew testified that he filled out a photo lab receipt for all the photos he took of evidence found inside the McLennon home at 8:35pm, which was before the police actually obtained and executed a search warrant. *Amended Complaint 42,43*. "It was not until November 3, 2010 that defendants learned that the cause of their unlawful arrest and detention for gun and related charges was the unlawful search and tainted seizure of evidence from their home prior to the above named defendants actually obtaining a warrant on false pretenses. Plaintiffs, until that point in time, were blamelessly ignorant as to the cause of their injury (unlawful arrest, incarceration, and prosecution). *Amended*

*Complaint 47.*  The three year statute of limitations for false arrest is three years
from the discovery of both the injury and the cause of the false arrest. That statute of
limitations would have run November 3, 2013. As such, plaintiffs commenced this
litigation before the statute of limitations expired.

On May 2, 2011 plaintiffs learned that Detective Deluca, acting in concert
with the other defendants, had conveyed false information to the Queens District
Attorneys Office about the content of what eyewitness/confidential informant
Andrew Khadaroo observed on the date of the shooting-claiming Khadaroo saw
plaintiffs shooting the Dixons outside. *Amended Complaint 23,24. Cf. Plaintiff's
Exhibit D, Excerpt Khadaroo testimony.* Deluca's conversations with the Queens DA's
Office were documented on the Queens DA Intake Report. *Amended Complaint 23,24.*
This report was redacted and the information about the confidential informant was
blacked out of the original report. However, on May  2, 2011 plaintiffs learned of the
existence of an unredacted intake report, accidentally disclosed by the prosecution,
containing the false information Deluca provided to the Queens District Attorney.
*Amended Complaint 23,24,48-51, 83*. The statute of limitation on plaintiff's 42 USCS
1983 claim therefore expired three years from the date the cause of injury was
discovered, which is May 2, 2011. As such, plaintiff's filing of their Section 1983 false
arrest claim was timely.

On or about December 2011 it was discovered at trial, during the testimony
of Detective Mathew,  that handwritten notes evidencing which room certain
weapons and ammunition were found, were lost. These notes were critical to the
defense since multiple tenants lived in the McLennon house at the time of the

incident, each occupying different bedrooms. *Amended Complaint 52,53,55*.

Plaintiff's had no knowledge this material evidence had been purportedly lost until

December 2011 and that the loss of this evidence had contributed to their

incarceration on remand and high bail, respectively. *Amended Complaint 52,53,55.*

Using the date plaintiff's discovered the cause of their injury to be loss of

exculpatory evident as the accrual date for the statute of limitations- plaintiffs

instituted this suit within the three year statute of limitations. *See Veal v. Geraci*, 23

F.3d 722 (2d Cir. 1994).

Richard Campbell and McLennon were incarcerated pending trial because

Detective Deluca forwarded false information to the Queens DA's office about having

reliable evidence that both plaintiffs were shooters on September 25, 2007.

Plaintiffs were injured in that they were incarcerated pending trial because of

defendant's false assertions about having reliable evidence that Campbell was a

shooter. However, Richard Campbell's clothes constituted exculpatory evidence

because, had it been tested, it would have evidenced a total lack of gunshot residue.

As such, his clothes were unequivocal proof that he was not a second shooter.

*Amended Complaint 56-60, 74*. Deluca vouchered Richard Campbell's clothes as

evidence and never submitted it for gunshot residue testing. As a result plaintiffs

were injured (incarcerated on remand and high bail) pending trial. On December

2011, after plaintiffs' motion to compel production of the clothing evidence was

granted, the plaintiffs learned that Detective Deluca had claimed to have lost this

crucial evidence- knowing that its existence would exonerate Campbell of being a

second shooter. *Amended Complaint 22, 58-59*.

Clearly, defendants did not discover the cause of their injury (remand status for McLennon and high bail for Campbell) was that Deluca had concealed exculpatory evidence, and concocted a story about losing the evidence- to avoid exonerating Campbell as being a second shooter. *Amended Complaint 22, 58, 59, 73.* "Plaintiffs were blamelessly ignorant that Detective Deluca's purported loss of exculpatory evidence was the cause of their unlawful arrest and continued prosecution on murder, manslaughter, assault in the first degree, and weapons related charges." *Amended Complaint 60.* Accordingly, the false arrest claim under 42 USCS 1983 accrued on the date plaintiffs discovered the cause of their injury was Deluca's misconduct in concealing and them purportedly losing exculpatory evidence. As such, the statute of limitations is due to expire on December 2014 and plaintiffs complaint was timely filed in the within action. *Veal v. Geraci, supra.*

Plaintiffs were remanded (injury) based on Detective Deluca's allegations to the prosecutor that he inspected and photographed Michael McLennon's body on September 27, 2007 and there was no evidence of fresh stab wounds- only preexisting scars. *Amended Complaint 61-67.* This was a lie. *Amended Complaint 61-67*, and the photographs Deluca claimed were taken on the day of McLennon's arrest, to refute a self-defense claim- turned out to be photos of the healed wound taken at Rikers Island several weeks later. *Amended Complaint 61-67.* In reality McLennon had a fresh stab wound as a result of being knifed from Winston Dixon. *Amended Complaint 61-67.* Although the prosecution successfully argued for remand status of McLennon and high bail for Campbell throughout the case during multiple bail applications, it was unknown at that time that Detective Deluca was feeding the

22

prosecution false information about when he took the photos of McLennon's stab wounds. Plaintiffs first learned Detective Deluca had lied about the photos on or about December of 2011, when Deluca testified at plaintiff's criminal trial and claimed to have taken photos of McLennon upon his arrest that were not consistent with fresh stab wounds (or self defense). *Amended Complaint 61-66*. Since the statute of limitations accrued on December 2011, plaintiff's Amended Complaint is timely.  Although the issue of absolute immunity will be discussed later, absolute immunity plays no role in this court's determination as to the date plaintiffs discovered the cause of their injury- with that date being Deluca's trial testimony. *See Veal v. Geraci, supra.*

Similarly, plaintiffs discovered one of the reasons they were remanded (McLennon) and given high bail (McLennon) was because Detective Galasso and other defendants lied to both the prosecution and Grand Jury about the existence of blood in the McLennon house when they received discovery of Detective Galasso's grand jury testimony pursuant to *People v. Rosario*, 9 NY2d 286 (1961) on or about October 2011, and thereafter heard him testify about the same at trial. People v. Rosario requires the prosecution to disclose all statements of prosecution witnesses relevant to the subject matter at trial after the jury is impanelled and before opening statements begin. The criminal trial in the within case commenced on or about October 24, 2011. *See Amended Complaint 22, 71-72*. Accordingly, plaintiffs filed this case within three years of discovering the cause of their injury was Galasso's false statements to the prosecution and grand jury about the absence of blood in the house.

Although the Amended Complaint is flooded with examples of unlawful police conduct which caused injury to plaintiffs, the above examples are sufficient to show that plaintiffs' Section 1983 False Arrest Claims are timely under the standard set forth in *Veal v. Geraci*, 23 F.3d 722 (2d Cir. 1994); *Barrett v. United States*, 689 F.2d 324, 333 (2d. Cir. 1982), *cert. denied* 462 US 1131 (1983); and *Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir. 1988). Accordingly, defense counsel's motion for dismissal of plaintiff's 42 USCS Section 1983 False Arrest claim, on statute of limitations grounds, should be denied in the entirety.

DEFENDANT'S FALSE ARREST CLAIM AND MALICIOUS PROSECUTION CLAIM UNDER 42 USCS SECTION 1983 ARE NOT BARRED BY THEIR CRIMINAL CONVICTIONS, WHICH ARE PENDING APPEAL; NOR ARE PLAINTIFF'S SECTION 1983 CLAIMS RELATED TO THEIR ACQUITTALS BARRED BY CONVICTIONS OF LOWER OFFENSES

Defendants contend in their motion to dismiss that plaintiffs are barred from pursuing a Section 1983 false arrest and malicious prosecution claim under *Heck v. Humphrey*, 512 U.S. 477 (1994) because success on a Section 1983 claim would render the plaintiffs convictions for gun and ammunition charges invalid. The defense argues that *Heck v. Humphrey* only allows a Section 1983 claim to go forward when a conviction or sentence has been overturned on appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* Defense contends plaintiffs Section 1983 claims must be barred because success on these claims would create inconsistent judgments between the federal court and the underlying state convictions, which is prohibited by Heck. Defendant's contentions are without merit.

24

There is no risk of inconsistent judgments when the underlying criminal case involves acquittals and dismissals, such as the instant case. Obviously, it would not be inconsistent for a federal court to find plaintiffs were maliciously prosecuted and falsely arrested for murder, manslaughter assault in the first degree, and assault in the second degree where plaintiffs were either acquitted of those crimes in the criminal forum or the charges were dismissed. Heck v. Humphrey maintained that plaintiff could not maintain a tort action if prevailing would necessarily undermine his criminal conviction. *Hope v. City of New York*, CV-08-5022 (EDNY January 22, 2010). In terms of the acquittals for violent A felonies (murder) and B felonies (manslaughter and assault in the first degree); and the dismissal of the C felonies (assault in the second degree), there is no conviction that runs the risk of being undermined. Accordingly, *Heck v, Humphrey* is inapplicable and a false arrest claim for these dismissals and acquittal is perfectly sustainable.

Defendants claim that plaintiffs are barred from suing under section 1983 for their acquittals on murder, manslaughter and assault because the convictions for lower gun and ammunition crimes equate the to existence of probable cause. This is, quite simply, wrong. An acquittal of a crime permits the inference that probable cause was lacking for that crime. *See Janetka v. Suffolk County*, 892 F.2d 187 (2d Cir. 1989). Moreover, a plaintiff can sue under Section 1983 on the grounds that probable cause was lacking even if he was convicted of one of the crimes charged, as long as he was acquitted of the more serious crime(s) charged, and the conviction was not for a lesser included offense. *See Janetka v. Suffolk County*, 892 F.2d 187 (2d Cir. 1989); *Posr v. Doherty. See also Cuthrell v. Zayre of Virginia*, 214 Va. 427

(1974)(conviction of disorderly conduct charge did not bar plaintiff's malicious

prosecution  action based on her acquittal of petty larceny charge because

disorderly conduct is not a lesser included offense); and *Ruff v. Ekerds Drugs, Inc.*,

265 S.C. 563, 220 S.E.2d 649,650-651 (plaintiff could sue for malicious prosecution

because favorable termination established where plaintiff convicted of assault

charge, but acquitted of disorderly conduct, even though both charges arose from

the same set of circumstances).

Moreover, the crimes for which plaintiffs were acquitted of were sufficiently

distinct from those they were convicted of. It goes without question that the

elements of murder, manslaughter and assault one (all involving death or serious

physical injury and carrying sentences up to 25 years or life) are distinct from the

gun and ammunition charges that plaintiffs were convicted of. The gun and

ammunition charges were not lesser included offenses of murder, manslaughter or

assault. Accordingly, Janetka and its progeny expressly state that a Section 1983

action is sustainable in such circumstances. Accordingly, plaintiffs can maintain a

Section 1983 cause of action for the crimes they were acquitted of or that were

dismissed.

The next question is whether plaintiff's can sustain a Section 1983 action for

the crimes they were convicted of; to wit, criminal possession of a weapon charges,

ammunition charges and perjury (Campbell only). The answer is yes. Heck v.

Humphrey does not apply to the instant lawsuit, because this case falls within an

exception to the Heck rule. A plaintiff who is not in state custody may bring a section

1983 action, notwithstanding the possible invalidation of their convictions, because

26

federal habeas corpus review is unavailable. *See Hope v. City of New York*, CV-08-5022 (EDNY January 22, 2010), *citing Leather v. Eyck*, 180 F.3d 420 (2d Cir. 1999); Huang v. Johnson, 251 F.3d 64,75 (2d Cir. 2001); *Jenkins v. Haubert*, 179 F.3d 420 (2d Cir. 1999); *Spencer v. Kemna*, 523 U.S. 1,21 (1998) (five Justices in concurring and dissenting opinions expressed the view that the Heck rule does not pertain to former prisoners no longer in custody). *In Leather v. Eyck* defendant was arrested for driving while intoxicated. He was prosecuted and only convicted the lesser charge of driving while impaired.  The district court dismissed his 42 USCS Section 1983 action on the incorrect grounds that success of the Section 1983 action would imply plaintiff's prior conviction was invalid and, therefore, violate *Heck v. Humphrey*. The Second Circuit reversed the district court's decision, holding that defendant was out of jail and therefore had no remedy at habeas corpus. "Having escaped the jaws of Heck, defendant should therefore be permitted to pursue his Section 1983 claim. *Leather,* 180 F.3d at 424. *See also, Hope v. City of New York, supra*, (court granting that part of plaintiff's motion for reconsideration where court initially dismissed Section 1983 false arrest claim stemming from plaintiff's arrest on drug charges and conviction of disorderly conduct. The Court initially dismissed plaintiff's case on the grounds that Heck v. Humphrey would be violated if plaintiff/arrestee was successful on his section 1983 action, since such success could lead to an inconsistent judgment with his underlying conviction. However, the Court granted plaintiff's motion for  reconsideration as it related to Heck v. Humphrey, and found that its ruling on that issue was mistaken. The Court held that

Heck v. Humphrey did not apply to section 1983 plaintiff who was no longer in prison since habeas corpus relief was not available to him).

Furthermore, plaintiffs would not be barred from bringing  a Section 1983 action for false arrest and malicious prosecution because collateral estoppel does not apply to convictions for which plaintiff has not yet had the opportunity to appeal. *See Crespo v. New York City Police Com'r*, 930 F. Supp. 109 (SDNY 1996), *citing Fletcher v. Atex Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995). Although defendants claim a Section 1983 action is not sustainable because the issue of probable cause has been decided by virtue of plaintiff's convictions, this is incorrect. In the instant case, McLennon and Campbell's appeals are pending in the Appellate Division Second Department, where the undersigned is their appellate attorney, and their convictions (including any findings of probable cause) have no preclusive affect until that appellate process is completed and plaintiffs have had a full and fair opportunity to litigate. *See Crespo v. New York City Police Com'r, 930 F. Supp. 109 (SDNY 1996), citing Fletcher v. Atex Inc., 68 F.3d 1451, 1458 (2d Cir. 1995).* Additionally, it should be noted the issue of probable cause to arrest has never been litigated in the criminal proceeding, since a hearing pursuant to Dunaway v New York (probable cause to arrest hearing) has never been conducted in this case. Moreover, probable cause was not even an element of any of the crimes for which defendants were convicted of. As such, collateral estoppel would be inapplicable in any event and success on a Section 1983 claim would not lead to inconsistent judgments in any event. *Crespo v. New York City Police Comm'r*, 930 F. sup. 109 (SDNY 1996) (collateral estoppel of Section 1983 claim inapplicable where probable

cause was not an element of the crime for which plaintiff was convicted and was, therefore, not essential to a final judgment in the state proceeding.)

For the foregoing reasons, plaintiffs have a right to commence a Section 1983 claim for all crimes they were tried for, inclusive of those they were acquitted of; those that were dismissed; and those they were convicted of.

<u>DEFENDANTS CLAIMS THAT PLAINTIFFS CANNOT SUPPORT A MALICIOUS PROSECUTION CLAIM, AS IT RELATES ONLY TO THE WEAPONS CHARGES THAT PLAINTIFFS WERE ACQUITTED OF, ARE WITHOUT MERIT</u>

Defendants contend that Richard Campbell's acquittal for criminal possession of a knife is a lesser included offense of Criminal Possession of a Weapon in the Third Degree, for which Campbell was convicted of. Defendants further assert the charges are not sufficiently distinct from one another to allow a malicious prosecution claim to go forward. This argument is factually and legally incorrect. Defendants attach an incomplete exhibit (Defense Exhibit L) of the Indictment against McLennon and Campbell. Attached hereto is the complete indictment filed with the Queens Supreme Court, which explains the nature and facts behind each respective charge. *Plaintiff's Exhibit B, Indictment.* Campbell was convicted of Count 8, Criminal Possesion of a Weapon in the Third Degree, for possessing a defaced firearm. Although the defense incorrectly asserts that Count Fourteen is a Lesser included offense for which Campbell was acquitted of, the Indictment proves the contrary. Count Fourteen of the Indictment (Possession of a knife) relates to a knife Campbell carried in his back pocket (no relation to the bloody butcher knife recovered in the bush), which police claimed had a blade in excess of four inches. Count 8 and 14 relate to completely different weapons in completely different

29

locations, recovered at completely different times. Contrary to defendant's claims, the charges were sufficiently distinct to allow Campbell to proceed with his malicious prosecution claim for the acquittal on the unlawful possession of a knife charge (Count 14) and the knife charge is not a lesser included offense of the gun charge.

In terms of the weapons offenses, McLennon received a favorable termination on the charges of Criminal Possession in the Second Degree (Count 4), even though he was convicted of the same charge (CPW Second Degree) in Count 5, under a different subsection of the penal law. The two Criminal Possession of a Weapon charges are sufficiently distinct from one another to allow a malicious prosecution to go forward on Count 4, which was dismissed during trial. Count 4 required knowing possession of a loaded firearm with the intent to use unlawfully against another. *Plaintiff's Exhibit E, Indictment.*  Count 5 had no mens rea requirement that McLennon intend to use the firearm unlawfully against another. That is a material and sufficient distinction to allow plaintiff's malicious prosecution claim to go forward on Count 4 (Criminal Possession of a Weapon with intent to use unlawfully against another). Additionally, the argument that CPW <u>Second</u> Degree (count 4) is a lesser included offense of CPW <u>Second</u> Degree, is nonsensical. Moreover, count 10 (Criminal Possession of a Weapon in the Fourth Degree) was not a lesser included of Count 5 (Criminal Possession of a Weapon in the Second Degree), because it related to a sufficiently distinct weapon; to wit, a stun gun found in the McLennon/Campbell residence. Accordingly, there is sufficient distinction

30

between the crimes plaintiffs were acquitted of and the crimes they were convicted

of to allow a malicious prosecution claim to proceed.

<u>PROBABLE CAUSE DID NOT EXIST TO PROSECUTE PLAINTIFFS FOR ATTEMPTED
MURDER/MURDER, ASSAULT, MANSLAUGHTER, AND CRIMINAL POSSESSION OF A
WEAPON</u>

Probable cause exists under federal law 'when the authorities have

knowledge or reasonably trustworthy information sufficient to warrant a person of

reasonable caution in the belief that an offense has been committed by the person to

be arrested. *Jovanovic v. City of New York*, No. 04 Civ. 8437 (PAC) (S.D.N.Y. August 17,

2006), *citing Smith v. Edwards*, 175 F.3d 99, 106 (2d Cir. 1999). However, "the fact

that a victim provides the police with information of an alleged crime does not,

without more, establish probable cause. Rather, the officer has a duty to assess the

reliablility of the victim and, if circumstances call into doubt the victim's veracity, to

investigate the allegations and corroborate them." *Jovanovic v. City of New York*, No.

04 Civ. 8437 (PAC), 2006 WL 2411541, at 7 (SDNY Aug. 17, 2006); see also *Singer v.

Fulton County Sheriff,* 63 F.3d 110,119 (2d Cir. 1995), stating "an arresting officer

advised of a crime by a person who has signed a complaint or information charging

someone with the crime, has probable cause to effect an arrest absent

circumstances that raise doubt as to the victim's veracity." Id. The failure to conduct

a further inquiry when a reasonable person may have done so may be evidence

probable cause was lacking. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir.

1996); *see also Bullard v. City of New York*, No. 01 Civ. 11613, 2003 WL 168444, at 4

(SDNY Jan 20, 2003)( denying a motion to dismiss where there was evidence the

victim was not a reliable source of probable cause and defendants failed to

investigate the allegations, corroborate them, or pursue the plaintifff's claims that

he was innocent.)

In the instant case Detectives Deluca, Galasso and all other named defendants

received a story from Rasheel Dixon about how McLennon and Campbell came out

of their home without provocation, each armed with a pistol and a revolver, and

began shooting Rasheel and Winston Dixon. *See Defense Exhibits C and D, Felony*

*Complaints*. Rasheel claimed that both he and his father had been shot by both

brothers, and by two different guns. See Felony Complaint. Rasheel further claimed

that these gunshots caused a laceration to his hand and wounds to his father,

Winston Dixon's torso. Defense Exhibits C and D, Felony Complaint.

Richard Campbell told a different story to police. "Richard Campbell advised

the police , including but not limited to Officer Vorraro, Detective Galasso, Detective

Steven Deluca, Detective Bendig, and Detective Alamonte that his brother had shot

Winston Dixon only after Dixon invaded their home wielding a long knife with a

white handle and that the shooting happened inside the house in self-defense."

*Amended Complaint 25*. Richard Campbell's statement on the scene was

corroborated as follows: Officer Vorraro observed Winston Dixon's knife in a bush,

after Dixon had tossed it there. *Amended Complaint 26*; Dixon's home made knife

sheeth was recovered, *Amended Complaint 29*; blood was observed all over the

interior of the house- on the walls, furniture, doorway and carpeting, *Amended*

*Complaint 27;* Andrew Khadaroo's statement to police about McLennon fleeing into

his home to retreat from the knife-wielding Dixons, *Amended Complaint 29*;

Campbell's written statement of a self-defense shooting inside the house, *Amended*

*Complaint 29*; Richard's clothing, which had no gunpowder residue consistent with him being a second shooter, *Amended Complaint 56-59;* shell casings within the residence consistent with a self-defense shooting within the home; *Amended Complaint 22,28*; ballistics evidence linked to only one semi-automatic gun, confirming only one shooter and not two (as Rasheel claimed), *Amended Complaint 22, 28;* and Dr. Elkowitz's diagnosis on showing Rasheel had never been shot, as claimed, and that he had actually been stabbed, *Plaintiffs Exhibit A (Elkowitz Medical Record).*

"When information is received from a putative eyewitness, probable cause exists "unless the circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001).  This list of circumstances, raising doubt as to Rasheel Dixon's veracity, is not exhaustive. However, it does illustrate that it was not objectively reasonable for any officer to believe that probable cause to arrest for murder, manslaughter, or assault existed. Moreover, no officer or reasonable competence would think probable cause existed under these circumstances to arrest plaintiffs for murder and related crimes. *See Jovanovic v. City of New York*, No. 04 Civ. 8437 (PAC) (SDNY August 17, 2006) (probable cause did not exist where medical and forensic evidence did not support complainant's detailed story about a brutal rape).

Similarly, the defendants in this case tried to cover up the inherent weaknesses in their case and exemplified the utmost bad faith by 1. falsifying police reports to alter eyewitness statement (i.e Andrew Khadaroo and John Cook), *Amended Complaint 29, 30, 48, 49, Defense Exhibit F, Plaintiff's Exhibits C and D;*

2. willfully refusing to conduct gunshot residue tests on Campbell's clothes and then willfully losing this exculpatory evidence when the Court compelled them to produce these clothes to the defense for examination, *Amended Complaint 56-60;* 3. Intentionally conducting an illegal and warrantless search of the McLennon/Campbell residence and subsequently submitting a perjurious search warrant affidavit, *Amended Complaint 31-41;* 4. fabricating statements and claiming Campbell made oral statements inculpating his brother as a cold blooded shooter, when defendants knew Campbell never made any such statements, *Amended Complaint 76-82;* 5. Lying in the grand jury, suppression hearings, and trial about the presence of blood in the house; the nature of McLennon's wounds; the and warrantless search of plaintiff's home. *Amended Complaint 22*.

The above list of willful and intentional police misconduct evidences the utmost bad faith by defendants in trying to fabricate evidence and conceal evidence which was exculpatory in nature. The Second Circuit has held that where a detective falsifies evidence, conveniently loses exculpatory evidence, and misrepresents evidence to the prosecution, there is an absence of probable cause and a Section 1983 claim can go forward. *See Manganiello v. City of New York*, 612 F.3d 149,167 (2d Cir. 2010) (holding that misconduct of lead detective in losing exculpatory evidence in case file and forwarding false information to prosecution indicated absence of probable cause. ). "Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to the prosecutors of known false evidence works an unacceptable 'corruption of the truth seeking function of the trial process." *Manganiello v. City of New York*, 612 F.3d

149, 162 (2d Cir. 2010), *citing Ricciuti v. NYC Transit Authority*, 124 F.3d 123, 130

(2d Cir. 1997), *quoting United States v. Agurs*, 427 U.S. 97, 104 (1976).

Notably, defendants contend that the loss of Campbell's clothes is not

actionable under the Supreme Court decision of *Arizona v. Youngblood*, 488 US 51

(1988) because the negligent loss of evidence is not actionable under 42 USCS

Section 1983. Defendant's contentions are meritless. Youngblood involved a plaintiff

who was convicted of raping a ten year old boy. The clothes of the boy were

vouchered and had semen samples which the prosecution negligently failed to test.

Youngblood was convicted and his conviction was reversed on appeal due to

insufficient evidence, stemming from the prosecution's failure to test the clothes.

Contrary to the circumstances in this case, the police in Youngblood never concealed

or "lost" the child's clothing. As a matter of fact, in Youngblood the police made the

clothing available for the plaintiff to test and it was the plaintiff who chose not to

test the clothes. The Court held that the police had not engaged in bad faith by

concealing or losing evidence and had given plaintiff every opportunity to inspect

the clothing. As such, the failure of the prosecution to test the clothes was at most

negligent. The Court specifically held that, although no Section 1983 claim could be

maintained for negligent handling of evidence, a cause of action was certainly

sustainable when police acted in bad faith in failing to maintain evidence, or make it

available to plaintiff. *Cf. Manganiello v. City of New York*, 612 F.3d 149, 167 (Lead

detective had obligation to preserve case file and his purported loss of file before

trial, when it contained potentially exculpatory evidence, evidenced a level of bad

faith actionable under Section 1983).

Furthermore, there is no probable cause when an indictment is procured by fraud, perjury, or suppression of evidence, or other police conduct taken in bad faith. Id. Examining the totality of the circumstances in the McLennon case, and drawing all inferences from plaintiff's allegations in the light most favorable to plaintiff, it is readily apparent that bad faith permeated this case and that probable cause was lacking. *See Jovanovic v. New York*, No. 04 Civ. 8437 (PAC)(SDNY August 17, 2006) (When considering a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences from these allegations in the light most favorable to the plaintiff.)

*DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY*

As an initial matter, defense counsel claims almost all of the defendants were not served with this action (except Deluca and Galasso), and that Detective Galasso and Steven Deluca are entitled to qualified immunity. Contrary to defense counsel's beliefs, all defendants were served with this action. *See Exhibit E-Affidavits of Service.* More importantly, none of the defendants are entitled to qualified immunity.

Qualified immunity protects a governmental official from suit if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time the action was taken. *Anderson v. Creighton*, 483 US 635, 639 (1987). Qualified immunity does not attach to the actions of the defendants in this case (fabricating evidence; falsifying police reports; losing exculpatory evidence; and lying to prosecutors, Grand Juries, Judges, and Juries), as these actions were violations of clearly established law, and no reasonable officer

would think such egregious behavior was lawful. *Amended Complaint 94-99*; *see also, Kinzer v. Jackson*, 316 f.3d 139,143 (2d Cir. 2003) (no qualified immunity attaches when police engage in knowing unlawful conduct aimed at bolstering their case, as a reasonable person should have known this kind of behavior was constitutionally impermissible). *See also, Manganiello v. City of New York*, 612 F.3d 149,165 (2d Cir. 2010). Accordingly, defendants are not entitled to qualified immunity.

PLAINTIFFS ARE NOT COLLATERALLY ESTOPPED FROM ATTACKING THE
VALIDITY OF THE SEARCH OF THEIR HOME

   Defendant's contentions that plaintiffs are collaterally estopped from relitigating the lawfulness of the search of their home, because they lost a suppression hearing on the matter, is without merit. Courts in this state have consistently held that facts determined in a pretrial suppression hearing cannot be given preclusive effect against a defendant subsequently acquitted of the charges." *Johnson v. Watkins*, 101 F.3d 792 (2d Cir. 1996). *See also Crespo v. New York City Police Comm'r*, 930 F. Supp. 109, 115 (SDNY 1996) ("collateral estoppel does not apply where appellate review of a suppression determination in a prior proceeding was foreclosed by an acquittal.")

   Just as plaintiff's cannot be collaterally estopped from alleging an unlawful search in their 42 USCS Section 1983 action for the crimes they were acquitted of, they also cannot be collaterally estopped from pursuing a civil rights action for the crimes that were dismissed are also actionable (two counts of assault in the second degree pertaining to Rasheel Dixon, criminal possession of a weapon in the second degree and unlawful possession of pistol ammunition dismissed). This was

illustrated in the case of *Williams v. Moore*, 197 A.D.2d 511, at 513 (2d Dept. 1993), where plaintiff Williams was arrested for robbery after the victim identified him as the perpetrator. A pretrial suppression hearing was held to determine whether there was probable cause to arrest, and the court found probable cause existed, thereby denying suppression. At trial the prosecutions star witness identified someone other than Williams as the robber and the prosecution consented to dismiss all charges. Williams brought suit for false arrest and the police officers sought to invoke collateral estoppel on the grounds that plaintiff had already litigated probable cause in the suppression hearing and lost. The Court refused to give preclusive effect to the pretrial suppression hearing findings, stating that "since the criminal charges against the plaintiff were ultimately dismissed…the plaintiff was precluded from seeking appellate review of the pretrial … determination. 197 A.D.2d at 513.  In short, where there is a favorable termination for a plaintiff, such as dismissal of the criminal charges, the suppression court's determination was not final for the purpose of invoking collateral estoppel.  Accordingly, McLennon and Campbell are not collaterally estopped from pursuing a malicious prosecution of false arrest claim under Section 1983, arising out of the unlawful and warrantless search of their home by defendants.

Collateral estoppel also does not preclude plaintiffs from pursuing a Section 1983 action arising from the recovery of weapons within their home, even though plaintiffs were convicted of weapons possession charges. Plaintiffs are presently appealing their convictions, which are pending in the Appellate Division Second Department. Under New York law, appellate review plays a critical role in

38

safeguarding the correctness of judgments, *Malloy v. Trombley*, 50 NY2d 46, 51 (1980), and collateral estoppel cannot be applied without first considering the availability of such review. *Johnson v. Watkins*, 101 F.3d 792 (2d Cir. 1996). If a party has not had an oportunity to appeal an adverse decision, then it has not had a full and fair opportunity to litigate that issue. *Johnson v. Watkins*, 1010 F.3d 792 (2d Cir. 1996), *citing People v. Medina,* 208 A.D.2d 771, 772 (2d Dept 1994). Accordingly, collateral estoppel will not bar reconsideration of an issue if there has been no review because an appeal has been taken and is still pending. *Johnson v. Watkins*, 101 F.3d 792 (2d Cir. 1996), *citing Gelb v. Royal Globe Ins. Co*., 798 F.2d 38, 44 (2d Cir. 1986); *People v. Sailor*, 65 NY2d 224, 229 (1985).

Since McLennon and Campbell's appeals are pending in front of the Appellate Division, they have not yet had a full and fair opportunity to litigate the issue pertaining to the lawfulness of the search of their home. *Johnson v. Watkins*, 101 F.3d 792 (2d Cir. 1996), and collateral estoppel will not apply when a party has not had a full and fair opportunity to litigate an issue. *Id*. Without a decision on the appeal, and while that appeal is pending, collateral estoppel will not bar their search warrant claims. See Crespo v.New York City Police Comm'r, 930 F. Supp. 109 (SDNY 1996) (holding that under New York law, a party has not had a 'full and fair opportunity to litigate issues ", for the purpose of the doctrine of collateral estoppel, if the party has not yet had an opportunity to appeal the adverse finding.

<u>PLAINTIFFS CLAIMS FOR UNLAWFUL SEARCH ARE NOT TIME BARRED.</u>

Defense counsel contends plaintiff's civil rights claims for unlawful search are time barred because the statute of limitations ran three years from arraignment, when they learned of the existence of a search warrant. This argument, however, is misplaced, because the issue is not when plaintiff's knew there was a warrant. The issue is when plaintiff's discovered the unlawful police conduct (search before obtaining a warrant) that gave rise to plaintiff's arrest and incarceration.  A cause of action for malicious prosecution under section 1983, premised on an unlawful search of plaintiffs' home accrues from the date plaintiffs discover both their injury and the illegal condut of police that gave rise to it. *See Veal v. Geraci*, 23 F.3d 722 (2d Cir. 1994); *Barrett v. United States,* 689 F.2d 324, 333 (2d. Cir. 1982); *Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir. 1988) (claim alleging sheriff conspired to deny claimant a fair trial accrued upon later discovery of sheriff's improper conduct).

Plaintiff's became aware of the impermissible search of their home without a warrant during a suppression on November 3, 2010. *See Amended Complaint 41,42,43,44,45.*. Plaintiffs, until that point in time, were blamelessly ignorant as to the cause of their injury (unlawful arrest, incarceration, and prosecution). *Amended Complaint 47*.  The three year statute of limitations for false arrest is three years from the discovery of the cause of the false arrest. As such, plaintiffs cause of action is timely.

DEFENDANTS CLAIMS THAT EVIDENCE SEIZED IN PLAINTIFF'S HOME PURSUANT TO A WARRANTLESS SEARCH IS NOT ACTIONABLE UNDER FRUIT OF THE POISONOUS TREE DOCTRINE

Defense counsel contends that weapons evidence recovered from plaintiff's home pursuant to a warrantless search is not actionable in a section 1983 claim, because fruit of the poisonous tree doctrine does not apply in a civil context. The Supreme Court of the United States addressed this very issue in Heck v. Humphrey, 114S.Ct. 2364 (1994) (holding that suit for damages attributable to allegedly unreasonable search may lie even if challenged search produced evidence that was introduced in state criminal resulting  in Section 1983 plaintiff's still outstanding conviction, as under doctrines like independent source, inevitable discovery, and harmless error, Section 1983 action, even if successful, would not necessarily imply that plaintiff's conviction was unlawful.) Accordingly, defendants are incorrect.

DEFENSE COUNSEL'S CONTENTIONS THAT PLAINTIFF CANNOT MAINTAIN A SECTION 1983 ACTION BECAUSE DEFENDANTS HAVE ABSOLUTE IMMUNITY FOR PERJURIOUS TESTIMONY IN SUPPRESSSION HEARINGS, GRAND JURY, AND TRIAL ARE WITHOUT MERIT.

Defendants cite *Rehburg v. Paulk*, 132 S. Ct 1497 (2012) for the contention that defendants, as law enforcement officers, have absolute immunity for perjurious testimony they gave in front of the Grand Jury, among other precedents holding that there is absolute immunity for perjurious testimony in pretrial hearings and trial. To begin with, it does not matter that Rehburg and related cases grant absolute immunity fore perjurious testimony, because this case does not rely exclusively upon the perjurious testimony of Galasso, Deluca, or any other defendant. Rather, the Amended Complaint articulates that the police lied to the DA about the presence of blood in the house to initiate and further a prosecution on murder; police lied in search warrant affidavits to cover up for a preexisting warrantless arrest; lied to a

criminal court judge to obtain a search warrant of a home already unlawfully searched; lied in police paperwork about exculpatory eyewitness testimony to bolster a weak case; disregarded material evidence like the knife and sheath at the scene; refused to voucher and test the bloody rug in the McLennon home for fear it would corroborate self-defense; fabricated false inculpatory statements attributable to Campbell and incorporated those statements into police paperwork before forwarding it to the DA; incorporated false statements in the felony complaint, and failed to disclose exculpatory evidence to prosecutors and the grand jury and the trial jury (such as the fact the confidential informant actually told them McLennon was first chased at knifepoint before shots rang out from within the home).

*Amended Complaint 1-99.*

Defense counsel claims his clients are entitled to absolute immunity for their misconduct because the perjury was committed under oath in a courtroom. However, defense counsel's reliance on Rehberg and its progeny is misplaced. Case law is clear that Rehburg is not an all purpose shield which crooked officers can avail themselves of simply by perjuriously testifying in a grand jury, pretrial proceeding or trial. *See Sankar v. City of New York*, 07 cv 4726 (RJD)(SMG) (July 18, 2012).

In Sankar v. City of New York, supra, Judge Dear stated, "Rehberg, however, is inapplicable. Rehberg did not alter controlling Second Circuit (and New York) law that an officer's filing of a sworn complaint is sufficient to satisfy the initiation prong of a malicious prosecution claim. Ostrowski's testifying at the grand jury was but one additional step this officer took in his effort to push the case against plaintiff

42

forward. If anything, Rehberg reinforces the distinction between one who simply testifies at a grand jury and 'does not make the decision to press criminal charges.' Rehberg, 132 S.Ct. at 1508, and one, like Ostrowski, who 'sets the wheels of government in motion by instigating a legal action. Id at 1507 (citing Wyatt v. Cole, 504 US 158, 164-165 (1992)). *Defendants' attempt to convert grand jury testimony into an all purpose shield from malicious prosecution liability is unpersuasive. The adoption of such a broad interpretation of Rehberg would allow any police officer- regardless of the extent of their involvement in laying the groundwork for an indictment- to escape liability merely by securing an appearance before a grand jury.* For all of the above reasons, defendant's motion for reconsideration is denied. *Sankar v. City of New York*, 07 cv 4726 (RJD)(SMG) (July 18, 2012)

The notion that Rehberg and its progeny does not serve as an all purpose shield for police misconduct, simply because police may have absolute immunity for perjury in a courtroom, was recognized in the Rehburg case itself. The Court stated in footnote 2 of its decision, "Of course we do not suggest that absolute immunity extends to all activity that a witness conducts outside the grand jury room." *Rehberg v. Paulk*, 132 S. Ct. 1497, Ftnt 1 (2012). Specifically, absolute immunity does not extend to officers who falsify affidavits, *Kalina v. Fletcher*, 522 US 118, 129-131 (1997); *Malley v. Briggs*, 475 US 335, 340-345 (1986), or officers who fabricate evidence, *Buckley,* 509 US at 272-276. See also Juris v. McGowan, 957 F.2d 345 (7th Cir. 1991) (holding that officer who commits perjurious testimony in grand jury not shielded by absolute immunity where he obtained an arrest warrant without probable cause); and *Tabaei v. New York City Health and Hospitals*, No. 11 Civ. 2013,

43

ftnt 5 (JSR) (SDNY Nov. 14, 2012) ("Defendants most recent argument that they are entitled to absolute immunity on the basis of the Supreme Court's recent decision in Rehberg completely misreads that decision. Rehberg held that a defendant cannot be held liable for testimony given in the grand jury. But, plaintiff here does not rely on defendants' grand jury testimony in any material respect.")

Furthermore, federal courts have noted an important distinction about the concept that an officer is absolutely immune from section 1983 liability for testimony in front of the grand jury. That distinction is that immunity does not attach when a police officer willfully refrains from giving exculpatory information in front of the grand jury- which is distinct from committing perjury. *See Lewis v. McDorman,* 820 F. Supp. 1001 (WD. Va. July 30, 1992) (holding that police officer who withheld exculpatory information from grand jury was not entitled to absolute immunity from arrestee's section 1983 claim, because officer was furthering a prosecution he knew lacked probable cause). Accordingly, no absolute immunity would attach for defendant's failure tell the Grand Jury about exculpatory information they possessed (i.e. blood on the walls, butcher knife recovered in bush, stab wounds on McLennon, and observations of confidential informant, etc).

<u>PLAINTIFFS SUFFERED AN INDEPENDENT POST-ARRAIGNMENT DEPRIVATION OF LIBERTY TO SUSTAIN A MALICIOUS PROSECTION CLAIM UNDER SECTION 1983</u>

Defense counsel moves to dismiss plaintiff's 24 USCS Section 1983 malicious prosecution claim on the basis that plaintiff's suffered no independent post-arraignment deprivation of liberty.

The Second Circuit has held that to show a violation of one's Fourth Amendment rights, a Section 1983 plaintiff asserting a malicious prosecution claim

"must…show some deprivation of liberty consistent with the concept of 'seizure'"
*Singer v. Fulton County Sheriff*, 63 F.3d 110,116 (2d Cir. 1995); *see also Rohman v.
N.Y. City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)(requiring a "sufficient post-arraignment liberty restraint to implicate the plaintiff's fourth amendment rights.").

Defendants claim that it is a requirement in the Second Circuit that a Section 1983 plaintiff must show *an independent, post arraignment seizure separate and apart from the charges they were <u>convicted of</u>.* Based on this misstatement of Second Circuit law, defendants claim that since plaintiffs were sentenced to jail sentences that amounted to time served on their gun charges, they served no independent post arraignment seizure separate and apart from the jail time they sentenced to, relative to their convictions. *Defendant's cite Walker v. Sanki*, 494 Fed. Appx. 140 (2d Cir. 2012) in support of their purported principal of law. A reading of the Walker case, however, demonstrates the way in which defense counsel has twisted the holding of that case, and the wording, to suit his own needs.

The Walker case did not say, anywhere in the entire decision, that a section 1983 plaintiff must prove and independent, post arraignment seizure separate and apart from the charges they were convicted of. The holding in Walker was that a plaintiff who was already incarcerated on an *unrelated criminal case* could not suffer an independent post-arraignment deprivation of liberty on a new arrest because he was already incarcerated in relation to the prior, unrelated case. Specifically, in Walker the plaintiff was in jail on a burglary charge when he was subsequently charged with an unrelated burglary. Since he was already incarcerated in another separate and preexisting burglary case, it could not be said that he suffered any

independent deprivation of liberty from the new case. *Id.* One cannot be deprived of liberty if they are already in jail at the time they are prosecuted on new and unrelated charges. The holding did not say Walker could not sue under Section 1983 because he suffered no independent post-arraignment seizure from the charges he was convicted of. It simply said he could not suffer an independent seizure when he was already in jail on an unrelated case. As such, defendants' claims that McLennon and Campbell can't sue because they were ultimately convicted and given a jail sentence that amounted to the time served distorts the holding of Walker.

This distortion is highlighted by comparing the instant case to the Walker case. McLennon and Campbell were not in jail when they were arrested and incarcerated in September of 2007 on murder, manslaughter, assault and related gun charges. The liberty restraint they suffered was clearly an independent post-arraignment seizure- since their seizure was not intertwined with any preexisting incarceration. In Walker the plaintiff was already an inmate imprisoned at the time he was arrested on new and unrelated burglary- such that it could not be said he suffered a seizure independent from his existing incarceration. All the other cases defendant cites stand for the same proposition Sankar. *See Arnold v. Geary*, 09 Civ. 7299 (GWG), 2013 US Dist. LEXIS 116475 (SDNY Aug. 16, 2013) (plaintiff barred from suing for malicious prosecution because he was already incarcerated on robbery charges when he was imprisoned on new and unrelated misdemeanor charges; *English v. Pero*, 07 CV 230F, 2011 US Dist. LEXIS 34518 (WDNY March 31, 2011), (no independent post-arraignment deprivation of liberty where plaintiff was already detained on gun charges at the time police later charged him with drug and

46

weapons charges, which resulted in an order of detention.) Again, this case is distinguishable from Campbell and McLennon's situation, since neither Campbell or McLennon were incarcerated when murder and related charges were lodged against them.

Some Circuits have even held that incarceration is not required in order for one to suffer a post arraignment deprivation of liberty sufficient for a malicious prosecution claim under Section 1983. *See Lewis v. McDorman*, 820 F.Supp. 1001 (W.D. Va. July 30, 1992) (incarceration of a plaintiff is not decisive in determining whether his constitutional rights have been abridged under Section 1983, for malicious prosecution. Rather, being subjected to a prosecution because and officer withheld exculpatory information from the prosecutor, while urging the prosecutor to go forward, equals a constitutional deprivation. This deprivation of liberty can include physical liberty, but is not limited to the same. It can also include disruption of employment, draining of plaintiff's financial resources, curtailment of his associations, exposure to public obloquy, and the creation of unnecessary anxiety so that the is not free to live his life normally). *Lewis v. McDorman*, 820 F.Supp. 1001 (W.D. Va. July 30, 1992).

In the case of Campbell and McLennon the post-arraignment deprivation of liberty was clear. First, McLennon was incarcerated on remand status for four years awaiting trial. *Amended Complaint 87*. Richard Campbell was incarcerated for approximately one year awaiting trial on high bail. *Amended Complaint 88.*  Since they were not incarcerated on any other charges at the time they were arrested, they suffered an independent post arraignment deprivation of their physical

liberty.However, under *Lewis v. McDorman*, they suffered other restraints on their liberty, such as the anxiety of facing murder, manslaughter, and assault in the first degree charges carrying up to life in prison (McLennon) and assault in the first and second degree charges (Campbell), carrying up to 25 years in jail. Accordingly, both of these plaintiffs suffered disruption of employment, unnecessary anxiety, loss of associations and public obloquy. *Id. See also, Amended Complaint 116-118*. As such, the deprivation of liberty prong for Section 1983 was clearly established, contrary to defense counsel's meritless claims.

MUNICIPAL LIABILITY

Plaintiff contends the Amended Complaint pleads sufficient facts to put defendants on notice of their municipal liability claim. The complaint speaks of a custom and practice at the 113 precinct to fabricate evidence, conceal evidence, misrepresent evidence, conduct warrantless searches and lie in affidavits and proceedings in order to bolster their cases. *Amended Complaint 90-94.*  As to the claims against the NYPD, plaintiffs agree the NYPD is not a suable entity and withdraws its claim only as to the NYPD.

Dated: February 14, 2014                                    /s/Tamara Harris