UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X
MICHAEL MCLENNON and RICHARD CAMPBELL,

               *Plaintiffs*,              **<u>MEMORANDUM & ORDER</u>**

    - against –              13-CV-128(KAM)(SMG)

NEW YORK CITY, POLICE OFFICER VORRARO,
DETECTIVE GALASSO, DETECTIVE RUSSO,
DETECTIVE STEVEN DELUCA, DETECTIVE
PHILLIP MATHEW, DETECTIVE DANIEL
HERNANDEZ, SERGEANT BEATTY, LIEUTENANT
KAISER, DETECTIVE ALAMONTE, OFFICERS JOHN
DOE 1-5, AND NEW YORK CITY POLICE
DEPARTMENT,

               *Defendants*.
-----------------------------------------X
**MATSUMOTO**, United States District Judge:

        Plaintiffs Michael McLennon and Richard Campbell

("plaintiffs") brought this lawsuit pursuant to 42 U.S.C. § 1983

and New York state law against the City of New York (the

"City"), the New York City Police Department (the "NYPD"),

Police Officer Vorraro, Detective Galasso, Detective Russo,

Detective Steven DeLuca, Detective Philip Mathew, Detective

Daniel Hernandez, Sergeant Beatty, Lieutenant Kaiser, Detective

Alamonte, and several John Doe police officers (collectively,

"defendants"), alleging violations of their constitutional

rights in connection with a September 25, 2007 altercation and

their subsequent arrest and prosecution.  Presently before the

court is defendants Detective DeLuca, Detective Galasso, and the

City of New York's (together, the "Moving Defendants") motion to

dismiss the Amended Complaint for failure to state a claim
pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the
reasons set forth below, the Moving Defendants' motion is
granted in part and denied in part.[1]

## BACKGROUND

The following facts are taken from plaintiffs' Amended
Complaint (ECF No. 17, Amended Complaint ("Am. Compl.") dated
10/10/13), as well as documents submitted with the Moving
Defendants' motion papers that the court may properly consider
on a motion to dismiss pursuant to Rule 12(b)(6), as discussed
in greater detail below.  On September 25, 2007, Rasheel Dixon
and his father, Winston Dixon, appeared at 191-20 110th Road,
St. Albans, New York, the residence of plaintiffs McLennon and
Campbell, who are brothers.  (Am. Compl. ¶¶ 1, 3, 25.)  Rasheel
and Winston Dixon had previously rented and lived in the
basement apartment at 191-20 110th Road, but had moved out of
the apartment prior to September 25, 2007.  (*Id.* ¶¶ 2, 3.)  They
returned to the residence after they had moved out, including on
September 23, 2007, when, according to the Amended Complaint,

---

[1] The Moving Defendants' memorandum notes that the other named defendants have
not been served but submits that the arguments apply with equal force to all
unserved officers.  (*See* ECF No. 31, Memorandum of Law in Support of
Defendants' Motion to Dismiss the Amended Complaint ("Def. Mem.") at 1 n.1.)
Plaintiffs' opposition memorandum provided copies of the service affidavits
for some but not all defendants.  (*See* ECF No. 38, Exhibit E to Plaintiffs'
Opposition Memorandum.)  Accordingly, the court considers the Moving
Defendants' motion as to all named defendant officers.

they broke into plaintiffs' home.[2]  (*Id.* ¶ 4.)

On September 25, 2007, the Dixons initiated an altercation with plaintiffs and chased Mr. McLennon into his home.[3]  (*Id.* ¶ 7.)  Winston Dixon, who was wearing a sheathed fifteen-inch butcher's knife, drew his knife and moved to attack Mr. McLennon.  (*Id.* ¶ 6.)  While his father's knife was drawn, Rasheel Dixon grabbed Mr. McLennon and held him down.  (*Id.* ¶ 9.)  As Mr. McLennon tried to free himself from the hold, he was stabbed by the elder Mr. Dixon.  (*Id.* ¶ 10.)  He was subsequently able to retrieve a gun hidden under a couch in the living room and shot Winston Dixon.  (*Id.* ¶ 11.)  While recoiling from the gunshot wound, Winston Dixon accidentally stabbed his son's hand.  (*Id.* ¶ 12.)

Mr. Campbell entered his residence upon hearing gunshots fired from within.  (*Id.* ¶ 13.)  Both of the Dixons exited the plaintiffs' house while bleeding from their wounds. (*Id.* ¶¶ 14-16.)  Winston Dixon disposed of his knife prior to the police arriving.  (*Id.* ¶ 17.)  The Amended Complaint alleges that the knife and sheath were seen and/or recovered.  (*Id.* ¶¶

---

[2] In a written statement to the police, Mr. Campbell noted that Winston Dixon had come to retrieve his belongings and kicked the door off its hinges.  (*See* ECF No. 30, Declaration of Richard Weingarten ("Weingarten Decl.") Ex. B, Statement of Richard Campbell.)  Plaintiffs and their family members had notified the police of the Dixons' returning to the residence and making threats, but no action was taken by the police.  (*Id.* ¶ 5.)

[3] In his statement, Mr. Campbell explained that Winston Dixon "went up into [Mr. McLennon's] face" and a verbal altercation ensued, after which Mr. McLennon punched Rasheel Dixon.  (*See* Weingarten Decl. Ex. B.)

22, 26, 29.) Mr. Campbell informed the police, including
Officer Vorraro and Detectives Galasso, DeLuca, Bendig, and
Alamonte, that Mr. McLennon shot Winston Dixon inside the
residence after Mr. Dixon had pulled out a large knife. (*Id.* ¶
25.) Mr. Campbell also informed the police that he had not
fired any gunshots. (*Id.* ¶ 75.)

    According to criminal complaints sworn by Detective
DeLuca, Rasheel Dixon informed the detective that both
plaintiffs fired gunshots at him and his father, that his father
was shot in the torso, and that he sustained a laceration to his
hand. (*See* Weingarten Decl. Exs. C-D, Criminal Complaints.)
Detective DeLuca also learned from a doctor at a local hospital
that Winston Dixon sustained four gunshot wounds and that
Rasheel Dixon's hand injury caused ligament damage. (*See id.*)
Other witnesses in the vicinity of plaintiffs' residence
reported to other police officers that both plaintiffs
brandished firearms. (*See* Weingarten Decl. Exs. F-G, Complaint
Follow-up Informational Reports ("DD5s").) Witnesses also
informed the police that one of the men left the scene in a
black car. (*See* Weingarten Decl. Ex. G.)

    The same day, police searched plaintiffs' residence
and photographed and seized firearms, a stun gun, and
ammunition. (*See* Am. Compl. ¶¶ 32, 37-38.) Mr. Campbell was
arrested on September 25, 2007 (*see* Weingarten Decl. Ex. H,

Campbell Arrest Report), and Mr. McLennon was arrested on September 27, 2007 (*see* Weingarten Decl. Ex. I, McLennon Arrest Report). Plaintiffs were charged with attempted murder, second-degree murder, manslaughter, and first-degree assault.[4] (*Id.* ¶ 30.) At their arraignments, plaintiffs were remanded to custody. (*Id.* ¶¶ 77-78.)

The Amended Complaint alleges a series of instances of misconduct by the police officers who responded to the residence, which misconduct allegedly undermined plaintiffs' justification of self-defense.[5] Plaintiffs allege that the police were aware of a witness who reported that Mr. McLennon was chased into his home at knifepoint by Winston Dixon, and that neither plaintiff fired gunshots outside of the home. (*Id.* ¶¶ 18-19.) Detective DeLuca, however, allegedly represented to the Queens District Attorney's Office Intake Bureau that the witness had in fact seen plaintiff fire guns outside the residence. (*Id.* ¶¶ 23, 48, 49.) Additionally, certain named defendants allegedly falsely represented that Mr. Campbell informed them that Mr. McLennon had shot Winston Dixon outside of the house. (*Id.* ¶ 76.)

---

[4] The arrest reports for plaintiffs list other charges including criminal possession of a weapon, criminal use of a firearm, and reckless endangerment. (*See* Weingarten Decl. Exs. H-I.) Detective DeLuca was the arresting officer and swore the criminal complaints. (*See id;* Weingarten Decl. Exs. C-D.)

[5] Plaintiffs appear to base these allegations on evidence adduced over the course of their underlying criminal case. (*See, e.g., id.* ¶¶ 41, 45, 47, 51, 59.)

The Amended Complaint further states that police
officers concealed, hid, and willfully refused to collect
evidence of blood within the home and other physical evidence
(including Mr. Campbell's clothing, a blood-stained rug, and
gunshot residue) that would support the theory that the shooting
of Winston Dixon was in self-defense after he chased plaintiffs
into their home. (*Id.* ¶¶ 19-22, 24, 29.) Officer Vorraro is
alleged to have seen the knife discarded by Winston Dixon in a
bush outside the residence. (*Id.* ¶ 26.) The officers who
arrived at the scene are alleged to have conducted an unlawful
search of the premises, during which they observed blood and
shell casings and claimed to have found guns and ammunition,
prior to obtaining a search warrant; subsequently, Detective
Galasso allegedly submitted a false affidavit in support of a
search warrant knowing that officers had already conducted a
search. (*Id.* ¶¶ 27-28, 31-35, 36-38, 42.) Certain evidence,
including notes indicating where in plaintiffs' residence the
seized contraband had been found, as well as Mr. Campbell's
clothing from the day of the shooting, was purportedly lost by
Detectives Mathew and DeLuca. (*Id.* ¶¶ 52-60.) Finally,
plaintiffs allege that numerous officers perjured themselves
before the grand jury, during a suppression hearing, and at
trial. (*Id.* ¶¶ 42-43; 61-67; 72.) The aforementioned
misconduct is alleged to have been the practice and custom of

the NYPD in order to ensure convictions. (*Id.* ¶¶ 89-90.)

Mr. McLennon was indicted on charges of murder in the second degree,[6] manslaughter in the first degree, assault in the first degree, criminal possession of a weapon in the second and fourth degrees, tampering with physical evidence, and unlawful possession of pistol ammunition. (*See* Weingarten Decl. Ex. K, Indictment No. 2562/2007; ECF No. 33, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp.") Ex. B, Indictment.) Mr. Campbell was indicted on charges of assault in the first degree, perjury, criminal possession of a weapon in the third and fourth degrees, unlawful possession of pistol ammunition, and unlawful possession of a knife. (*See id.*) Mr. McLennon was incarcerated without bail for four years awaiting trial, and Mr. Campbell was in custody on $150,000 bail for one year awaiting trial. (Am. Compl. ¶¶ 78, 87-88.) On December 14, 2011, Mr. McLennon was convicted by a jury of criminal possession of a weapon in the second degree and fourth degree and tampering with physical evidence, and acquitted of the charges of murder in the second degree, manslaughter in the first degree, and assault in the first degree.[7] (*Id.* ¶ 104; *see*

---

[6] In the time between plaintiffs' arrest and indictment, Winston Dixon had died from his wounds. (*See* Weingarten Decl. Ex. J, Complaint Follow-up Informational Report dated 10/7/07.)

[7] Unidentified handwritten notes on the signed indictment indicate that two counts of assault in the second degree and a second count of criminal possession of a weapon in the second degree were dismissed by the prosecution on December 2, 2011. (*See* Weingarten Decl. Ex. K.)

*also* Weingarten Decl. Ex. K; Weingarten Decl. Ex. L, Certificate of Disposition; Opp. Ex. B.)  He was ultimately sentenced to four-and-a-half years in prison, which amounted to the time he had served awaiting trial, and five years of parole supervision. (*Id.*)  Mr. Campbell was convicted of perjury and criminal possession of a weapon in the third degree, and acquitted of charges of assault in the first degree and criminal possession of a knife.[8]  (Am. Compl. ¶ 107; Weingarten Decl. Ex. M, Certificate of Disposition).  Mr. Campbell was sentenced to 360 days in custody, which also amounted to time served.  (*Id.*)

Plaintiffs filed this action bringing claims for false arrest, malicious prosecution under § 1983 and intentional infliction of emotional distress under New York law.  (*See generally* Compl.; Am. Compl.)  They seek both compensatory and punitive damages from defendants.  (*Id.*)  The instant motion to dismiss by Detective DeLuca, Detective Galasso, and the City ensued.[9]

---

[8] The handwritten notes on the indictment indicate that the charge of criminal possession of a weapon in the fourth degree was dismissed by the prosecution and the charge of unlawful possession of pistol ammunition was dismissed by the court on December 2, 2011.  (*See* Weingarten Decl. Ex. K.)

[9] The Moving Defendants assert that the remaining individual defendants named in the Amended Complaint have not been served but that the arguments raised in their motion apply equally to all defendants. (*See* Def. Mem. at 1.) Plaintiffs assert that the remaining defendants have been served and attach affidavits of service for several but not all officer defendants to their opposition papers. (*See* Opp. Ex. E.)  As the court's rulings herein would apply equally to the non-moving defendants in this case, the court dismisses plaintiffs' false arrest and intentional infliction of emotional distress claims for failure to state a claim as to the non-moving and unserved defendants *sua sponte*.  *See, e.g.*, *Beck v. City of New York*, No. 12 CIV.

## STANDARD OF REVIEW

### I.  Motion to Dismiss Pursuant to Rule 12(b)(6)

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### II. Materials Outside the Pleadings

The Moving Defendants submitted numerous extrinsic documents as exhibits to the Weingarten Declaration, including arrest reports, criminal complaints, complaint follow-up reports (known as DD5s), indictments, certificates of disposition, and a written statement by Mr. Campbell, to which they refer throughout their motion papers.

---

9231, 2014 WL 80544, at *1 (S.D.N.Y. Jan. 3, 2014) (dismissing *sua sponte* claims against unserved defendant).

"[O]n a motion to dismiss, a court may only consider [1] the pleading itself, [2] documents that are referenced in the complaint, [3] documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and [4] matters of which judicial notice may be taken." *Arrocha v. City Univ. of New York*, 878 F. Supp. 2d. 364, 368 (E.D.N.Y. 2012) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) and *Int'l Audiotext Network, Inc. v. Am. Tel.& Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). It is well established that a court considering a motion pursuant to Rule 12(b)(6) may take judicial notice of arrest reports, certificates of disposition, criminal complaints, DD5s, and indictments. *See, e.g.*, *Liang v. City of New York*, No. 10-CV-3089, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013). "Where the Court takes judicial notice, it does so 'in order to determine what statements [the public records] contained . . . not for the truth of the matters asserted.'" *Monroe v. Myskowsky*, No. 12 CIV. 5513, 2014 WL 496872, at *1 n.3 (S.D.N.Y. Feb. 6, 2014) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

Plaintiffs contend that this court cannot consider the documents, even though they are in the public record, because plaintiffs did not rely on the documents in drafting their

complaint and dispute the veracity of the contents of the reports.[10] (Opp. at 4-5.) Yet plaintiffs allege in support of their claims that defendants falsified the information that appears in the documents relating to their arrest and prosecution. Further, although plaintiffs dispute the sequence of events contained in the arrest reports and other documents filed in connection with the investigation and prosecution, they do not dispute the authenticity of those documents, nor do they dispute that the documents were created and utilized in connection with plaintiffs' allegedly false arrests and prosecution, or that the documents in fact contain the statements found therein. Thus, the court will look to the arrest reports (Exs. H-I), DD5s (Exs. F-G, J), Unusual Occurrence Report (Ex. E), criminal complaints (Exs. C-D), indictment (Ex. K), certificates of disposition (Exs. L-M), and notice of claim (Ex. N) for the dates, charges, case numbers, and other information relevant to the filing and disposition of the charges against plaintiffs.[11]

---

[10] Despite plaintiffs' contention to the contrary, however, the Second Circuit's decision in *Chambers* does not require that a plaintiff must have relied on a document for a court to take judicial notice of it; rather, the *Chambers* court considered whether certain documents extraneous to a complaint and not in the public record were properly considered on a motion to dismiss as integral to the complaint. *See Chambers*, 282 F.3d at 152-54. The court found that, while the relevant contracts referenced throughout the complaint were integral to the complaint, unsigned drafts of an industry collective bargaining agreement were not part of the complaint. *See id.*

[11] The court will also consider Mr. Campbell's written statement (Weingarten Decl. Ex. B) because it is explicitly referenced throughout the complaint and

Plaintiffs also annex to their opposition memorandum five exhibits, without an accompanying affidavit or declaration from plaintiffs' counsel: certain medical records pertaining to Rasheel Dixon (Opp. Ex. A), an unsigned copy of an indictment in plaintiffs' criminal case that includes the elements of the alleged offense conduct (Opp. Ex. B),[12] excerpts of unidentified transcript testimony by a "J. Cook" (Opp. Ex. C), excerpts of unidentified transcript testimony from an "A. Khadaroo" (Opp. Ex. D), and affidavits of service for Detective Daniel Hernandez, Police Officer Vorraro, Detective DeLuca, Detective Galasso, Detective Philip Mathew, Detective Bendig, and the City of New York (Opp. Ex. E). Pursuant to Local Civil Rule 7.1(a)(3) and (b), any party supporting or opposing a motion may file "affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion." *See also Spears v. City of New York*, No. 10-CV-03461, 2012 WL 4793541, at *1 n.3 (E.D.N.Y. Oct. 9, 2012). Despite plaintiffs' counsel's failure to follow the Local Rules, and because consideration of the exhibits would not affect the court's rulings herein, the court will consider

---

plaintiffs' opposition. *See Liang*, 2013 WL 5366394, at *5 (considering documents incorporated by reference into the complaint "as though they were part of the complaint itself").

[12] Plaintiffs allege that the Indictment submitted by the Moving Defendants as Exhibit K to the Weingarten Declaration is incomplete because it does not include the elements of the charges; however, plaintiffs do not contend that the list of charges therein is incomplete. (*See* Opp. at 8.)

plaintiffs' exhibits to the extent they are relevant and identifiable from plaintiffs' opposition.

**DISCUSSION**

The court addresses plaintiffs' claims for false arrest, malicious prosecution, intentional infliction of emotional distress, and municipal liability in turn.  Based on plaintiffs' representation in their opposition (*see* Opp. at 48), plaintiffs' claims against the NYPD are deemed withdrawn and the NYPD is dismissed.

## I.   False Arrest

Plaintiffs claim that they were unlawfully arrested in connection with the shooting of Winston Dixon on September 25, 2007.  The statute of limitations for false arrest claims under § 1983 is three years, *see Kevilly v. New York*, 410 F. App'x 371, 375 (2d Cir. 2010) (citing *Okure v. Owens,* 816 F.2d 45, 49 (2d Cir. 1987)), and begins to run at the end of the alleged false imprisonment, or when "'the victim becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges.'"  *Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (quoting *Wallace v. Kato,* 549 U.S. 384, 388–89 (2007)).

Plaintiffs were arraigned shortly after their allegedly false arrests in September 2007, over four years before they were sentenced.  (*See* Am. Compl. ¶ 78 (alleging that

13

Mr. McLennon was incarcerated for four years awaiting trial);

¶ 104 (alleging that Mr. McLennon's four-and-a-half year

sentence amounted to time served); *see also* Weingarten Decl.

Exs. H-I, Arrest Reports.)  Although plaintiffs argue that their

false arrest claims did not accrue until various 2010 and 2011

court appearances in their criminal cases, from which plaintiffs

learned of alleged misconduct by various named defendants, they

cite no authority that supports their theory or suggests that

*Wallace* should not apply here.[13]  Plaintiffs filed this action on

January 9, 2013, more than five years after they were arraigned

in their criminal cases, and have not alleged facts suggesting

that their false arrest claims are subject to equitable tolling.

Accordingly, plaintiffs' false arrest claims are time-barred and

must be dismissed.[14]  *See Lynch*, 348 F. App'x at 675.

---

[13] Despite plaintiffs' argument that "the Second Circuit has carved out
explicit exceptions" to the rule that false arrest claims accrue when an
individual is held pursuant to legal process, the cases cited by plaintiffs
pre-date the Supreme Court's decision in *Wallace* and involve various causes
of action under § 1983 *other* than false arrest.  *See Veal v. Geraci*, 23 F.3d
722 (2d Cir. 1994) (due process); *Barrett v. United States*, 689 F.2d 324 (2d
Cir. 1982) (conspiracy); *see also Freeze v. Griffith*, 849 F.2d 172 (5th Cir.
1988) (conspiracy).

[14] Having concluded that plaintiffs' false arrest claims are time-barred, the
court does not address whether the false arrest claims are also precluded by
the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).
Separately, the court notes, however, that plaintiffs cannot plausibly plead
false arrest in light of their convictions on counts of criminal possession
of a weapon, which indicate that there was probable cause for plaintiffs'
arrests.  *See Johnson v. City of New York*, 551 F. App'x 14, 15 (2d Cir. 2014)
(citing *Jaegly v. Couch,* 439 F.3d 149, 154 (2d Cir. 2006) and *Cameron v.
Fogarty,* 806 F.2d 380, 388–89 (2d Cir. 1986)).

## II. Malicious Prosecution

To bring a § 1983 malicious prosecution claim, a plaintiff must allege the four elements of a malicious prosecution claim under New York law — "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions" – as well as a post-arraignment seizure. *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (internal citations and quotation marks omitted).

### A. Favorable Termination

Plaintiffs were convicted by a jury on December 14, 2011 of the following counts: criminal possession of a weapon in the second degree and fourth degree, tampering with physical evidence, and unlawful possession of pistol ammunition (Mr. McLennon), and perjury and criminal possession of a weapon in the third degree (Mr. Campbell). (*See* Weingarten Decl. Exs. L-M.) Thus, because favorable termination is a necessary element of a malicious prosecution claim, plaintiffs' malicious prosecution claims are dismissed for failure to state a claim upon which relief can be granted insofar as they are based on the charges for which plaintiffs were convicted (*see* Opp. at 26,

29-31).[15]  *See Montane v. Pettie*, No. 10-CV-4404, 2012 WL

1617713, at *3 (E.D.N.Y. May 8, 2012) (citing *Heck*, 512 U.S. at

484); *see also Cameron,* 806 F.2d at 386-89.

Where a criminal prosecution concluded in a

defendant's conviction on some charges and acquittal on others,

the court must determine whether the charges are "sufficiently

distinct to allow a malicious prosecution claim to proceed on

the charge for which there was an acquittal." *Janetka v. Dabe*,

892 F.2d 187, 190 (2d Cir. 1989).  The parties do not dispute

that the acquitted charges of murder, manslaughter, and assault

are sufficiently distinct from the weapons charges for which

plaintiffs were convicted such that plaintiffs' malicious

prosecution claims can proceed with regard to the former

charges.  Although the Amended Complaint only alleges malicious

---

[15] Plaintiffs argue unpersuasively that their malicious prosecution claims
based on the counts of conviction should survive dismissal because they fall
within an exception to the Supreme Court's *Heck* bar.  (Opp. at 24-29.)  The
cases plaintiffs cite are inapposite.  In *Jenkins v. Haubert*, 179 F.3d 19, 21
(2d Cir. 1999), the Second Circuit held that a prisoner challenging his or
her conditions of confinement could bring a § 1983 claim where a federal
habeas corpus remedy was unavailable.  Plaintiffs here bring a malicious
prosecution claim and are not challenging the conditions of their
confinement.  The plaintiff in *Leather v. Eyck*, 180 F.3d 420 (2d Cir. 1999),
was never in custody (and therefore was unable to challenge his conviction
via habeas corpus) and brought a selective prosecution claim, also not at
issue in this case.  However, as the court rules above, plaintiffs do not and
cannot allege that their prosecutions on the charges for which they were
convicted terminated in their favor.  *See Cameron*, 806 F.2d at 387; *see also
DiBlasio v. City of New York*, 102 F.3d 654, 659 (2d Cir. 1996); *cf. Poventud
v. City of New York*, 750 F.3d 121, 130-32, 137 (2d Cir. 2014) (discussing the
favorable termination requirement of malicious prosecution claims and
distinguishing malicious prosecution claims from other § 1983 claims that do
not require that the underlying criminal case reach a favorable termination).
Plaintiffs' contention that they may bring malicious prosecution claims for
the charges for which they were convicted because they are appealing their
convictions is similarly meritless given plaintiffs' inability to satisfy the
favorable termination element that is necessary to their claim.

prosecution claims based on Mr. McLennon's acquittal on charges of murder in the second degree, manslaughter, and assault, and Mr. Campbell's acquittal on charges of assault in the first degree and criminal possession of a knife (*see* Am. Compl. ¶¶ 105, 108), plaintiffs appear to assert malicious prosecution claims based on their favorable terminations on various other weapons charges in their opposition (*see* Opp. at 29-31).

As an initial matter, plaintiffs cannot use their opposition to the instant motion to amend the allegations in the Amended Complaint. *See, e.g.*, *CSX Transp., Inc. v. Emjay Envtl. Recycling, Ltd.*, No. 12-CV-1865, 2013 WL 1209116, at *2 (E.D.N.Y. Mar. 25, 2013) (internal citations omitted). Nevertheless, because a comparison of the certificates of disposition (Weingarten Decl. Exs. L-M) and the indictments submitted by the parties (Weingarten Decl. Ex. K; Opp. Ex. B) indicates that plaintiffs may have received a favorable termination as to additional weapons charges, the court will consider the Moving Defendants' arguments that any claim for malicious prosecution pertaining to the acquitted and dismissed weapons charges is barred. Specifically, the Moving Defendants argue that the weapons charges for which plaintiffs received a favorable termination are not sufficiently distinct from the weapons charges for which plaintiffs were convicted under the Second Circuit's decision in *Janetka*. (Def. Mem. at 18-19.) In

*Janetka*, the Second Circuit determined that the plaintiff could pursue a malicious prosecution claim as to an acquitted charge of resisting arrest that "arose out of events that occurred on the same occasion" as a disorderly conduct charge for which the plaintiff was convicted after weighing factors including the similarity of the charges, whether one charge was a lesser included offense of another, and whether the alleged conduct underlying each charge was directed at different people. *See Janetka,* 892 F.2d at 190. The Second Circuit has expressed concern regarding "the possibility of a prosecutor securing an indictment for an easily provable minor offense and adding to it more serious charges with the hope that proof of probable cause on the lesser charge would insulate the prosecutor from liability for malicious prosecution on the unproved serious ones." *DiBlasio*, 102 F.3d at 658.

Mr. McLennon was convicted of criminal possession of a firearm in the second degree (Count 5 of the Indictment (*see* Weingarten Decl. Ex. K; Opp. Ex. B) and in the fourth degree (Count 10), as well as unlawful possession of pistol ammunition (Count 12). A second count of criminal possession of a weapon in the second degree (specifically, Count 4, possessing a loaded firearm with intent to use it against another (*see* Opp. Ex. B)) was dismissed as to Mr. McLennon during the criminal trial. Mr. Campbell was convicted of criminal possession of a weapon in the

18

third degree (Count 8) and acquitted of unlawful possession of a knife (Count 14).  Charges of criminal possession of a weapon in the fourth degree (Count 11) and unlawful possession of pistol ammunition (Count 13) were dismissed as to Mr. Campbell during the criminal trial.[16]

Plaintiffs argue that the weapons charges for which plaintiffs received favorable terminations were not lesser-included offenses of and involve different elements than the weapons charges for which they were convicted.  Plaintiffs' reasoning is persuasive as applied to Count 4, the one weapons charge against Mr. McLennon that was ultimately dismissed. Count 4, Criminal Possession of a Weapon in the Second Degree, was based on Mr. McLennon's possession of a loaded firearm with the alleged intent to use it against another.  (*See* Opp. Ex. B.) This charge was equally, if not more serious than the top weapons charge of which Mr. McLennon was in fact convicted (Count 5, criminal possession of a weapon in the second degree, based on Mr. McLennon's possession of a loaded firearm outside of his home).  Moreover, the dismissed charge includes an element not present in any of the weapons charges of which Mr.

---

[16] The complaint does not include factual allegations regarding the grounds for dismissal of the various weapons charges against plaintiffs on December 2, 2011.  Because the court cannot conclude at this stage that the dismissal of those weapons charges was inconsistent with plaintiffs' innocence, the court finds that plaintiffs have sufficiently alleged favorable termination as to the dismissed weapons charges.  *See, e.g., Norton v. Town of Brookhaven*, No. 13-CV-3520, --- F. Supp. 3d ---, 2014 WL 4700250, at *8 (E.D.N.Y. Sept. 18, 2014).

McLennon was convicted – namely, intent to use the weapon against another. Thus, defendants' motion to dismiss Mr. McLennon's malicious prosecution claim based on the charges of murder in the second degree (Count 1), manslaughter in the first degree (Count 2), assault in the first degree (Count 3), assault in the second degree (Counts 6 and 7), and criminal possession of a weapon in the second degree (Count 4) is denied.[17]

The other weapons charges upon which Mr. Campbell was not convicted, however, were no more serious than the weapons charge for which he was convicted. *See Brown v. Seniuk*, No. 01 CV 1248, 2002 WL 32096576, at *3 (E.D.N.Y. Mar. 25, 2002). Furthermore, although the charges were based on different weapons, the elements of the charges, all relating to Mr. Campbell's possession of various weapons or ammunition, are similar. (*See* Opp. Ex. B.) Finally, officers found the weapons for which he was charged during the same search arising out of the September 25, 2007 shooting. Accordingly, because the weapons charges for which Mr. Campbell received a favorable termination (Counts 11, 13, and 14) are sufficiently related to the weapons charge of which he was convicted (Count 8), his

---

[17] Accordingly, for the reasons set forth above, Mr. McLennon's malicious prosecution claim is dismissed insofar as it is based on the charges of criminal possession of a weapon in the second degree pursuant to New York Penal Law § 265.03(3) (Count 5), tampering with physical evidence (Count 9), criminal possession of a weapon in the fourth degree (Count 10), unlawful possession of pistol ammunition (Count 12).

malicious prosecution claim based on the favorably-terminated

weapons charges is dismissed.[18]

**B.    Probable Cause**

The Moving Defendants also contend that plaintiffs'

malicious claim must fail because defendants had probable cause

to prosecute plaintiffs.  (Def. Mem. at 13-16.)  In the context

of a malicious prosecution claim, probable cause to prosecute

consists of "facts and circumstances that would lead a

reasonably prudent person to believe the plaintiff guilty."

*Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (citing

*Colon v. City of New York,* 60 N.Y.2d 78, 82 (1983)).  Probable

cause is evaluated "in light of the facts known or reasonably

believed at the time the prosecution was initiated, as opposed

to at the time of arrest."  *Drummond v. Castro*, 522 F. Supp. 2d

667, 677-78 (S.D.N.Y. 2007) (internal citations and quotation

marks omitted).

A presumption of probable cause is created by a grand

jury indictment.  *Colon,* 60 N.Y.2d at 82.  Where an indictment

has been issued, as here, the presumption of probable cause may

be rebutted by evidence that the indictment was procured by

"fraud, perjury, the suppression of evidence or other police

conduct undertaken in bad faith."  *Savino v. City of New York*,

---

[18] As discussed above, Mr. Campbell cannot state a claim for malicious
prosecution as to the counts of conviction (Counts 8 and 15).  Thus, Mr.
Campbell's malicious prosecution claim survives only with regard to the
charge of assault in the first degree (Count 3).

331 F.3d 63, 72 (2d Cir. 2003) (citing *Colon,* 60 N.Y.2d at 83) (internal quotation marks omitted). "[I]t is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." *Id.* at 73. Plaintiff cannot satisfy this burden "with mere 'conjecture' and 'surmise' that [the] indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Id.* (internal citation omitted).

Plaintiffs have sufficiently alleged that the indictments in their criminal case were procured by bad faith. The Amended Complaint alleges, *inter alia*, that the officer defendants failed to obtain or disclose evidence inconsistent with plaintiffs' guilt, did not document or inform the district attorney's office of exculpatory evidence, falsely reported facts in reports and search warrant affidavits, and fabricated oral statements by Mr. Campbell and other witnesses. Plaintiffs claim that the officers sought to strengthen their case against plaintiffs in order to avoid acquittal, leading them to falsify and omit information in their reports and representations to the district attorney's office. Assumed to be true, as they must be at the motion to dismiss stage, the facts alleged by plaintiffs sufficiently rebut the presumption of probable

cause.[19] *See, e.g.*, *Gannon v. City of New York*, 917 F. Supp. 2d
241, 244-45 (S.D.N.Y. 2013) (denying motion to dismiss malicious
prosecution claim because plaintiff alleged sufficient facts to
create inference that officer lied about the circumstances of a
search to secure indictment); *Conte v. Cnty. of Nassau*, No. 06-
CV-4746, 2008 WL 905879, at *11 (E.D.N.Y. Mar. 31, 2008); *see
also Brandon v. City of New York*, 705 F. Supp. 2d 261, 273-74
(S.D.N.Y. 2010) (denying summary judgment with respect to
malicious prosecution claim because jury could reasonably find
that indictment was secured through bad faith or perjury).

Defendants argue that they were entitled to rely on
the identification and account provided by Rasheel Dixon, as
corroborated by a bystander and medical personnel at the scene,
and, thus, probable cause existed for plaintiffs' prosecution.
(*See* Def. Mem. at 13-16.) In support, the Moving Defendants

---

[19] In concluding that plaintiffs have alleged sufficient facts to rebut the
presumption of probable cause created by the grand jury indictment in their
criminal cases, the court recognizes that law enforcement officials enjoy
absolute immunity from civil liability based on testimony given before the
grand jury. *Rehberg v. Paulk*, 132 S. Ct. 1497, 1510 (2012). In *Coggins v.
Buonora*, 776 F.3d 108, 113 (2d Cir. 2015), however, the Second Circuit
affirmed the district court's denial of absolute immunity to a police officer
who had allegedly committed perjury before the grand jury, finding that the
plaintiff's section 1983 claims were based on alleged misconduct (the
withholding and falsification of evidence) that was independently actionable
"prior to and independent of [the police officer's] perjurous grand jury
appearance." *See also* Rehberg, 132 S.Ct. at 1507 n.1. Accordingly, because
the Amended Complaint alleges misconduct by the officer defendants including
the fabrication of evidence and withholding of material exculpatory evidence
from prosecutors, separate from the officers' alleged perjury before the
grand jury and during other trial proceedings, the court declines to dismiss
plaintiffs' malicious prosecution claim on absolute immunity grounds at this
juncture.

assert that defendants were not required to credit or weigh plaintiffs' conflicting accounts prior to their arrest and that the probable cause inquiry ended once Rasheel Dixon provided his account of the shooting to Detective DeLuca.  Even if probable cause existed at the time of plaintiffs' arrest,[20] however, plaintiffs have alleged facts supporting the plausible inference that probable cause did not exist for the prosecution of plaintiffs given the information defendants allegedly knew about, concealed, and/or refused to collect -- including potential residue on Mr. Campbell's clothes, the knife and sheath used by Winston Dixon recovered at the scene, and the blood stains inside plaintiffs' home -- that would tend to exculpate plaintiffs or establish their justification of self-defense before the grand jury.

The Moving Defendants argue that the evidence pointed to by plaintiffs is insufficient to vitiate the probable cause to arrest that existed based on Rasheel Dixon's statement, the injuries sustained by the Dixons, and Mr. McLennon's flight from the scene, but they do not address the sufficiency of plaintiffs' allegations of misconduct by defendants.  *See Posr*

---

[20] Defendants cite the Second Circuit's decision in *Curley v. Village of Suffern*, 268 F.2d 65 (2d Cir. 2001), for the proposition that "[w]hen information is received from a putative victim or an eyewitness, probable cause [to arrest] exists, unless the circumstances raise doubt as to the person's veracity."  Here, plaintiffs allege that accounts from eyewitnesses and physical evidence at the scene of the crime provided reason to question Mr. Dixon's veracity.

*v. Court Officer Shield No. 207,* 180 F.3d 409, 417 (2d Cir. 1999) ("[t]he defendants seem to conflate probable cause to arrest with probable cause to believe that [the plaintiff] could be successfully prosecuted.  Only the latter kind of probable cause is at issue with respect to the malicious prosecution claim . . . .").  For example, the Moving Defendants offer alternative explanations as to how blood could have been found in plaintiffs' home and how Winston Dixon's knife came to be found outside the home.  (*See* ECF No. 32, Defendants' Reply Memorandum of Law ("Def. Reply") at 11-13.)  These theories are improper for the court's consideration on a motion to dismiss, where the court assumes the facts in the Amended Complaint to be true and draws all inferences in favor of plaintiffs while assessing the sufficiency of plaintiff's allegations.

According to the Amended Complaint, the grand jury indicted plaintiffs as a result of misconduct by the defendants and after defendants knew that plaintiffs were not guilty of the offenses of murder, manslaughter, and assault.  These allegations, taken as true for purposes of this motion, rebut any presumption of probable cause that the grand jury indictment might otherwise afford.  Whether the information alleged to have been withheld or falsified was in fact so withheld or fabricated is not for the court to decide on a motion to dismiss. Plaintiffs have alleged that the officer defendants acted in bad

faith in procuring an indictment; accordingly, the court is

unable to conclude, based on the assumed truth of the

allegations, that the prosecution of plaintiffs was based on

probable cause.[21]

### C.    Qualified immunity

The doctrine of qualified immunity protects government

officials from civil liability when their "conduct does not

violate clearly established statutory or constitutional rights

of which a reasonable person would have known." *Harlow v.*

*Fitzgerald,* 457 U.S. 800, 818 (1982).  "The availability of the

defense depends on whether a reasonable officer could have

believed his action to be lawful, in light of clearly

established law and the information he possessed." *Weyant v.*

*Okst,* 101 F.3d 845, 858 (2d Cir. 1996) (internal quotation marks

and alterations omitted).

The Second Circuit has stated that "a defendant

presenting an immunity defense on a Rule 12(b)(6) motion instead

of a motion for summary judgment must accept the more stringent

standard applicable to this procedural route.  Not only must the

facts supporting the defense appear on the face of the complaint

but, as with all Rule 12(b)(6) motions, the motion may be

granted only where it appears beyond doubt that the plaintiff

---

[21] Because "[a] lack of probable cause generally creates an inference of
malice," *Boyd*, 336 F.3d at 78, the court finds that plaintiffs have
adequately alleged the malice element of their malicious prosecution claims.

can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (internal citations and quotation marks omitted).

Based on the court's determination that plaintiffs have sufficiently alleged that their prosecution was not based on probable cause and that the officer defendants acted in bad faith by fabricating, misrepresenting, and withholding evidence, a reasonable officer would not have considered the defendants' alleged conduct to be lawful. *See Anilao v. Spota*, 774 F. Supp. 2d 457, 493 (E.D.N.Y. 2011); *Guzman v. City of New York*, No. 08-CV-2853, 2010 WL 4025563, at *3 (E.D.N.Y. Oct. 13, 2010); *cf. Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010) (holding that district court properly denied judgment as a matter of law on qualified immunity where jury found that defendant "misrepresented the evidence to the prosecutors, or failed to pass on material information, or made statements that were false, and engaged in such misconduct knowingly"); *Scotto v. Almenas,* 143 F.3d 105, 113 (2d Cir. 1998) (finding dismissal pursuant to Rule 12(b)(6) on qualified immunity grounds inappropriate where  plaintiff "allege[d] that [the defendant] fabricated a parole violation and arrested him knowing he lacked probable cause to do so").  Thus, assuming the allegations in the Amended Complaint to be true, the court denies defendants' motion to dismiss plaintiffs' malicious prosecution claims on

qualified immunity grounds with regard to the charges of murder
in the second degree, manslaughter in the first degree, assault
in the first and second degrees, and criminal possession of a
weapon in the second degree under New York Penal Law §
265.03(1)(B) against Mr. McLennon and the charge of assault in
the first degree against Mr. Campbell.

### D. Deprivation of liberty

The Moving Defendants next argue that plaintiffs are
"unable to establish that they suffered *independent*, post-
arraignment seizures based on the charges for which they were
not convicted." (Def. Mem. at 20 (emphasis in original).) It
is well-settled that a plaintiff already in custody on other
charges at the time of his prosecution cannot bring a malicious
prosecution claim because there is no deprivation of liberty
interest. *See, e.g.*, *Walker v. Sankhi*, 494 F. App'x 140, 143
(2d Cir. 2012). Here, however, plaintiffs were
contemporaneously deprived of their liberty awaiting trial on
all of the charges, some of which they were convicted and others
of which they were acquitted. The allegations in the Amended
Complaint could plausibly support an inference that the murder,
manslaughter, and assault charges resulted in the judge
remanding Mr. McLennon and setting bail at $150,000 for Mr.
Campbell. Furthermore, given that plaintiffs had fulfilled
their ultimate custodial sentences on the offenses for which

they were convicted by the time they were sentenced, the Moving Defendants' contention that plaintiffs "nonetheless would have proceeded to trial and spent the same amount of time in custody pending said trial" had they not been prosecuted for murder, manslaughter, and assault is not undisputable.

The Moving Defendants' reliance in *English v. Pero*, No. 07-CV-00230F, 2011 WL 1302266 (W.D.N.Y. Mar. 31, 2011) and *Reyes v. City of New York*, 992 F. Supp. 2d 290 (S.D.N.Y. 2014), does not change the court's analysis. In that case, the decisions regarding the plaintiff's detention awaiting trial were made when the plaintiff was charged with only one charge, of which he was ultimately convicted. Thus, the court was able to conclude that no reasonable jury could find that the plaintiff would not have endured the same deprivation of liberty in the absence of the additional charges of which he was ultimately acquitted, which had been added via two superseding indictments filed after the orders of detention had been entered. *English*, 2011 WL 1302266, at *4. Similarly, in *Reyes*, the court, considering summary judgment on the plaintiff's claim for the denial of his right to a fair trial, found that the connection between the purportedly fabricated evidence and plaintiff's deprivation of liberty was too attenuated to raise a material fact issue. *Reyes*, 992 F. Supp. 2d at 298. At this stage, plaintiffs' allegations are held to a plausibility

standard.  Furthermore, the cause of action for denial of the
right to a fair trial requires that the defendant fabricate
evidence that results in the plaintiff's loss of liberty, while
a malicious prosecution plaintiff need only show that his
unlawful prosecution resulted in a deprivation of liberty.

Accordingly, the court finds that plaintiffs have
sufficiently alleged a malicious prosecution claim based on
their prosecutions for murder, manslaughter, and assault,[22] and
the Moving Defendants' motion to dismiss this claim is denied.

## III. Intentional Infliction of Emotional Distress

Plaintiffs allege that defendants' outrageous conduct,
including concealing exculpatory information, lying under oath,
refusing to examine exonerative evidence, and fabricating
inculpatory statements by Mr. Campbell, caused plaintiffs severe
emotional distress.  (Am. Compl. ¶¶ 116-18.)  Although neither
party addressed the timeliness of plaintiffs' intentional
infliction of emotional distress claim, such claims are subject
to a one-year statute of limitations under New York law.
C.P.L.R. § 215(3); *see also Brewton v. City of New Yor*k, 550 F.
Supp. 2d 355, 370 n.13 (E.D.N.Y. 2008).  As plaintiffs state in
their opposition, any tortious conduct by defendants, even under

---

[22] Because the court finds that plaintiffs have sufficiently alleged a
malicious prosecution claim, the court does not address defendants' arguments
that plaintiffs' malicious prosecution claims are precluded insofar as they
rely on defendants' purportedly unlawful search of plaintiffs home or
allegations of lost evidence at this time.

a continuing violation theory, concluded with the end of the criminal cases against plaintiffs on December 14, 2011. (*See* Opp. at 16-17.) The instant action was filed on January 9, 2013; accordingly, plaintiffs' intentional infliction of emotional distress claim is untimely. *See Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 211 (E.D.N.Y. 2010).

Even if plaintiffs' intentional infliction of emotional distress claim were timely, it would fail on the merits. Both federal and state courts routinely hold that plaintiffs cannot bring an intentional infliction of emotional distress claim that falls "within the ambit of other traditional tort liability." *See, e.g.*, *Lopez v. City of New York*, No. 14-CV-1660, 2014 WL 5090041, at *4 (S.D.N.Y. Oct. 10, 2014); *Brewton*, 550 F. Supp. 2d at 370 (citing, *inter alia*, *Leonard v. Reinhardt*, 20 A.D.3d 510 (2d Dep't 2005)). Plaintiffs allege no conduct by defendants other than that underlying their false arrest and malicious prosecution claims. Thus, the court grants the Moving Defendants' motion to dismiss plaintiffs' intentional infliction of emotional distress claim.

## IV. Municipal Liability

To the extent plaintiffs bring a municipal liability claim against the City, it fails as a matter of law. To state a claim for relief against a municipal defendant pursuant to 42 U.S.C. § 1983, a plaintiff must allege the existence of an

officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Board of County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 403-404 (1997) (citing *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658 (1978)).

Plaintiffs do not allege any fact from which the court can infer the existence of a city policy or custom, or that any such policy or custom caused the allegedly unlawful arrest or prosecution of plaintiffs. The conclusory assertion in the Amended Complaint that "unspoken practice, policy and custom of the 113 precinct of the NYPD to engage in the fabricating of evidence, concealing of exculpatory evidence, misrepresenting of evidence to the prosecution, conducting of warrantless searches, lying in affidavits, and lying in multiple court proceedings- in order to misrepresent the strength of their investigations and to ensure convictions" (Am. Compl. ¶ 90; *see also* ¶¶ 84, 89) does not suffice to state a claim under *Monell*. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("[t]he mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference"), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163

(1993); *Bradley v. City of New York*, No. 08-CV-1106, 2009 WL
1703237, at *3 (E.D.N.Y. June 18, 2009).

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

## CONCLUSION

For the foregoing reasons, the court (1) grants defendants' motion to dismiss plaintiffs' false arrest and intentional infliction of emotional distress claims as to all defendants for failure to state a claim under Rule 12(b)(6); (2) denies defendants' motion to dismiss Mr. McLennon's malicious prosecution claim based on his favorable terminations on the charges of murder in the second degree (Count 1), manslaughter in the first degree (Count 2), assault in the first degree (Count 3) and second degree (Counts 6 and 7), and criminal possession of a weapon in the second degree under Penal Law § 265.03(1)(B) (Count 4), as well as Mr. Campbell's malicious prosecution claim based on his favorable termination on the charge of assault in the first degree (Count 3); and (3) denies plaintiffs leave to replead their false arrest and intentional infliction of emotional distress claims because amendment would be futile. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

**SO ORDERED.**

Dated:      March 31, 2015
            Brooklyn, New York


_____/s/_____
Kiyo A. Matsumoto
United States District Judge